## FARRAR & SWERINGEN, Respondents, v. CHRISTY'S ADMINIS-TRATORS, Appellants.*

1. William Christy, being seized in fee of four lots in the city of St. Louis, by deed dated September, 1832—his wife Martha T. joining in the convey-ance—conveyed the same to their two sons Edmund T. and Howard F. Christy; the lots were conveyed by separate metes and bounds, two lots to Edmund and two to Howard. The deed contained the following haben-dum : "to have and to hold the premises aforesaid with all the appurtenan-ces thereunto belonging to them and their heirs forever, upon condition that should either of the grantees herein named die without leaving legal heirs of their body, the survivor shall inherit the whole of the property hereby conveyed ; and should both grantees die without leaving legal heirs as afore-said, the property hereby conveyed shall revert to the other legal heirs of the said William and Martha T." Edmund T. Christy died in the year 1840, without leaving heirs of his body, he having never been married. After the death of Edmund, the heirs of William and Martha T. Christy, by deed dated October 7th, 1842, released to Howard F. Christy all their "right, title, interest, estate and expectancy" in and to the said four lots ; this deed of release contained the following recital: "which lots of land were held to said Edmund T. and Howard F., in the manner specified in said deed, with cross remainder to the survivor, and also on a certain con-tingency with remainder to the heirs general of said William Christy and Martha T. Christy," &c. Howard F. Christy executed a bond of even date with the above release in the penal sum of $3000 to James T. Swerin-gen and Martha his wife—the said Martha being one of the heirs of Wil-liam and Martha T. Christy; the said bond contained the following condi-tion: "The condition of the above obligation is such, that whereas, &c., [reciting the conveyance of September 20th, 1832,] and whereas, upon the happening of certain contingencies in said deed mentioned and contained, the said property, lots and parcels of ground therein specified would by the terms of said deed revert and belong to the heirs of the said grantors in said deed, of whom the said Martha, wife of James T. Sweringen, is one ; and whereas the said James T. Sweringen and Martha his wife have, by their deed made jointly with certain other heirs of the said William Chris-ty and wife, executed to the said Howard F. Christy a release and quit claim of all such right, title, interest, estate and expectancy in and to said property, as they would have been entitled to by virtue of the first mention-ed deed upon the happening of said contingencies, had not said release been executed : Now, if the contingency in the first deed mentioned shall hap-

---

* This case was decided at the October term, 1856, of the Supreme Court. LEONARD, Judge, does not concur in the opinion of the majority of the court. No opinion has however been filed by him.

pen, whereby the said obligees or their heirs would have been entitled by virtue of said first mentioned deed to said property, or any part thereof, or any interest in the same, had not said release been executed, and the said Howard F. Christy, his heirs, executors or administrators shall well and truly pay to the said James T. Sweringen and Martha his wife, their heirs, executors, &c., the value at the time of happening of said contingency of the portion, part or interest which the said Sweringen and wife, their heirs, executors or administrators would have been entitled to in said property in said first deed described by virtue of said deed, had not the said release been executed, then this obligation shall be void ; otherwise shall remain in full force and virtue." Howard F. Christy died in the year 1853, leaving a widow but no heirs of the body.

*Held*, in a suit against Howard F. Christy's administrators to recover the value of the interest in said four lots (alleged to be one-sixth) that would have vested, but for the above release, in Mrs. Sweringen at the death of Howard without leaving heirs of his body :

1st. That, construing the deed of September 20th, 1832, with reference to the rules of the common law, Edmund T. Christy and Howard F. Christy would have each become seized in fee tail of the two lots granted to each respectively.

2d. That, by the operation of the act of February 14, 1825, (R. C. 1825, p. 216,) the estates tail that would have vested, but for said act, in Edmund and Howard respectively, were cut down and destroyed, Edmund taking a life estate only in the two conveyed to him, and Howard a life estate only in the two lots conveyed to him ; that a remainder in Edmund's two lots immediately passed in fee simple absolute to Howard (subject, however, to be divested by the birth of issue of Edmund) ; that a remainder in Howard's two lots passed in fee simple absolute to Edmund (subject to be divested by the birth of issue of Howard) ; that the remainder in Howard's two lots, which vested in fee simple absolute in Edmund, descended upon his (Edmund's) death to his heirs general, of whom Mrs. Sweringen was one.

3d. That consequently there was a good cause of action on said bond, inasmuch as the release above mentioned was effectual to transfer to Howard F. Christy an interest that had vested in Mrs. Sweringen in two of the four lots embraced in the deed of September 20, 1832.

4th. That defendants were not estopped to deny that Mrs. Sweringen took an interest in said lots under the limitations of the deed of September 20, 1832.

5th. That no recovery could be had beyond the penalty of the bond.

## *Appeal from St. Louis Land Court.*

William Christy and Martha T. Christy, on the 20th of September, 1832, executed the following deed : " This deed, made

and entered into this twentieth day of September, eighteen hundred and thirty-two, by and between William Christy and Martha T. Christy, his wife, of the one part, and Edmund T. Christy and Howard F. Christy, of the other part, witnesseth, that for and in consideration of one dollar, to them in hand paid, the receipt whereof is hereby acknowledged, and for other good and lawful considerations, the parties of the first part do hereby give, grant and convey, and by these presents do give, grant and convey unto Edmund T. Christy [here follow the descriptions of two several lots in the city of St. Louis] ; and the said William and Martha T. also convey as aforesaid to Howard F. Christy [here follow the descriptions of two several lots of ground in the city of St. Louis] ; to have and to hold the premises aforesaid, with all the appurtenances thereunto belonging, to them and their heirs forever, upon condition that, should either of the grantees herein named die without leaving legal heirs of their body, the survivor shall inherit the whole of the property hereby conveyed, and should grantees die without leaving legal heirs as aforesaid, the property hereby conveyed shall revert to other legal heirs of the said William and Martha T. And the grantors also condition that they reserve to themselves the entire control over the property hereby conveyed, and the rents and benefits resulting from the same, during the time that they or either of them shall live; and the said William and Martha T. do covenant to and with the said Edmund T. and Howard F. that they will warrant and forever defend the property hereby conveyed to them and their heirs forever, against their heirs and all and every person claiming through or under them or either. In testimony whereof we have hereunto set our hands and seals the year and day above written. [Signed] W. Christy, (seal.) Martha Christy, (seal.)"

Edmund T. Christy died in the year 1840, without leaving heirs of his body. He was never married.

In the year 1842, doubts arising as to the construction to be given to the above deed, the other heirs of William and Martha T. Christy joined in the execution of the following deed of re-

lease, dated October 7th, 1842, to Howard F. Christy : "Whereas, William Christy and Martha T. Christy, by their deed, dated twentieth day of September, eighteen hundred and thirty-two, conveyed to Edmund T. Christy about thirty feet of land fronting on Third street, being part of block ninety-one, and bounded on the south by a two story brick house, on the north by Green street, and to run westwardly with Green street half the distance between Third and Fourth streets, with about the width of thirty feet, and also forty-three feet of said lot, beginning on Fourth street at the line which separates the Christy lot from the land owned then by J. B. Brant ; thence northwardly with Fourth street forty-three feet ; thence eastwardly and parallel to Green street, half the distance between Third and Fourth streets ; and also did convey thereby to Howard F. Christy about forty-five feet of the front of their land on Third street, (on which then stood a two story brick house,) bounded on the south by the line which separated then the said Christy and Brant's land, and on the north by the northern wall of said brick building, and to run westwardly and parallel to Green street, and with the width of about forty-five feet, half the distance between Third and Fourth streets ; and they also thereby conveyed to said Howard F. Christy thirty feet of their land aforesaid, to begin at the intersection of Green and Fourth streets, thence southwardly with Fourth street thirty feet ; thence eastwardly and parallel to Green street, with the width of thirty feet, half the distance between Third and Fourth streets ; which lots of land were held to said Edmund T.· and Howard F., in the manner specified in said deed, with cross remainders, to the survivor, and also on a certain contingency with remainder to the heirs general of said William Christy and Martha F. Christy ; and whereas the said Edmund T. Christy hath departed this life without issue, and the heirs of said William and Martha T. have agreed to relinquish all their estate and expectancy in said lots to the said Howard F. Christy : now, therefore, we, Mary Ann Wright, Nathaniel P. Taylor and Matilda N. his wife, Harriet M. Dean,

Edwin B. Smith and Virginia M. his wife, James F. Sweringen and Martha his wife, Henry S. Coxe and Mary Ann his wife, David D. Mitchell and M. Eliza his wife, and Frances S. M. Wash, (who, together with said Howard F. Christy, are the only heirs of said William Christy and Martha F. Christy,) in consideration of the premises and of one dollar to us paid by the said Howard F. Christy, do hereby grant, sell, alien, remise, release, and forever quit claim to the said Howard F. Christy, all our and each of our right, title, interest, estate and expectancy in and to said lots, and each of them. To have and to hold the said lots, and all our right, title, interest, estate and expectancy in the same and each of them, with all rights, privileges and appurtenances thereto belonging, unto him, the said Howard F. Christy, and to his heirs and assigns, forever. In testimony whereof, &c."

Cotemporaneously with the execution of the said deed of release, the following bond was executed : " Know all men by these presents, That we, Howard F. Christy, principal, and David D. Mitchell and C. J. Schaumburg, securities, are held and firmly bound unto James T. Sweringen and Martha his wife, their heirs, executors and administrators, in the sum of three thousand dollars, to which payment well and truly to be made, we bind ourselves, our heirs, executors and administrators, firmly by these presents. Given under our hands and seals this seventh day of October, in the year eighteen hundred and forty-two.

" The condition of the above obligation is such, that whereas William Christy and wife, by their deed, bearing date the twentieth day of September, eighteen hundred and thirty-two, now of record in the recorder's office of St. Louis county, in book A, number 2, p. 201 and following, conveyed to Edmund T. Christy and Howard F. Christy, certain lots or parcels of ground lying in the city of St. Louis, in block number ninety-one, and more particularly described in said deed, upon certain conditions therein specified ; and whereas, upon the happening of certain contingencies in said deed mentioned and contained,

the said property, lots and parcels of ground therein specified, would, by the terms of said deed, revert and belong to the heirs of the said grantors in said deed, of whom the said Martha, wife of James T. Sweringen, is one; and whereas the said Jas. T. Sweringen and Martha his wife have, by their deed made jointly with certain other heirs of the said William Christy and wife, executed to the said Howard F. Christy a release and quit claim of all such right, title, interest, estate and expectancy in and to said property as they would have been entitled to by virtue of the first mentioned deed, upon the happening of said contingencies, had not said release been executed : " Now, if the said contingency in the first deed mentioned shall happen, whereby the said obligees, or their heirs, would have been entitled by virtue of said first mentioned deed to said property, or any part thereof, or any interest in the same, had not said release been executed, and the said Howard F. Christy, his heirs, executors or administrators, shall well and truly pay to the said James T. Sweringen and Martha his wife, heirs, executors, administrators or assigns, the value at the time of happening of said contingency, of the portion, part, or interest which the said Sweringen and wife, their heirs, executors, or administrators, would have been entitled to in said property in said first deed described, by virtue of said deed, had not the said release been executed, then this obligation shall be void, otherwise shall remain in full force and virtue. [Signed] H. F. Christy (seal). D. D. Mitchell (seal). C. W. Schaumburg (seal)."

Howard F. Christy died in the year 1853, married, but leaving no heirs of the body. William Christy died in the year 1837, leaving eight heirs, of whom Mrs. Sweringen was one, she being the only child of a deceased daughter of said William Christy. The last will of said Christy contained the following passage : " Taking into consideration the present state of the remaining members of my family, I think it but just and equitable that my grand-daughter, Martha J. Sweringen, shall receive only one-half of such proportion of my landed estate as

would have been her mother's had she survived me and I had died intestate."

· This suit was instituted in behalf of Mrs. Sweringen in her name and in that of Farrar, her trustee, to whom James T. Sweringen had assigned in trust whatever interest he had acquired by virtue of contracts entered into with Howard F. Christy. Plaintiffs allege that at the death of Howard F. Christy, the interest of Mrs. Sweringen in the four lots embraced in the deed of William Christy and wife was worth $12,000, for which sum judgment was asked.

The court instructed the jury as follows : " 1. The deed given in evidence by the plaintiffs of William Christy and Martha T. his wife (of date September 20, 1832,) to their two sons, Edmund and Howard F. Christy, operated to convey to each one of said grantees, Edmund and Howard, and their heirs, the fee simple, the whole estate in and to the lots to them respectively conveyed by said deed ; consequently there was no estate remaining in the grantors that could by law be limited over to Mrs. Sweringen, and therefore she takes nothing as a purchaser under that deed. 2. The deed given in evidence from Martha J. Sweringen and others, as heirs of William and Martha T. Christy, of date October 7th, 1842, and the bond given in evidence from Howard F. Christy, and Mitchell and Schaumburg, his securities, of same date, October 7th, 1842, (if the jury find said deed and bond to be true and genuine,) do operate to estop the defendants, administrators of Howard F. Christy, to deny that Mrs. Sweringen, as one of the heirs of William and Martha T. Christy, would have been entitled to a proportionate share in the said land, upon the death of said Howard without issue, but for the fact that she had already released and conveyed her interest therein in his lifetime."

The following instructions asked by the defendant were refused : " 1. The jury is instructed that the plaintiff is not entitled to recover in the present case damages beyond the penalty of the bond read in evidence by the plaintiff. 2. The plaintiff can recover nothing for the value of the share of the property

in question that was conveyed by William Christy and wife to Edmund T. Christy. 3. If Edmund T. Christy died leaving debts unpaid at the present time, the same are a charge on the share of said Edmund in the property in question, and should be deducted from the value of such share in ascertaining the interest that descended to his heirs. 4. If the will of W. Christy, read in evidence, be genuine, then in ascertaining the interest of Martha J. Sweringen in the two lots conveyed by said William to his son Howard upon the death of her grandfather, the jury will allow to her one-half the share that her mother would have taken as heir of the said William."

The jury found for the plaintiffs, and judgment was rendered in accordance with the verdict for $12,173.

*Wm. C. Preston, R. M. Field* and *B. A. Hill,* for appellants.

I. What estates passed to Edmund T. Christy and Howard F. Christy by the deed of September 20, 1832? The court below considered that said deed gave to Edmund and Howard fees simple in their respective lots. Conceding that so far the court properly construed the deed, then Howard F. Christy owned the two lots conveyed to him absolutely, and they may be left out of the case, as they passed by his devise to his widow. It is only necessary to inquire how Edmund's two lots passed at his death. The court held that at his death they passed to his heirs. The court erred in holding that the limita- . tions over were void for the reason that the contingencies were too remote and tended to create a perpetuity, and because the grantors having conveyed fees simple to the grantees there was nothing remaining to limit, and so the remainders were void. (4 Greenl. Cruise, 98 note; 1 Prest. on Est. 154.) It is true that by the ancient rules of the common law there could be no future interests limited after a prior estate in fee simple. This rule however has never been applicable to limitations in wills, or conveyances deriving their operation from the statute of uses, which was in force in this state in 1832. Ever since the period of its enactment, a future interest could be limited upon

a fee simple as readily in a deed as in a will, and such a quality is one of the cardinal distinctions between deeds before and after the passage of that statute. The fee simple estates on which such limitations were made became thereby *defeasible fees simple*. (Den v. Schenck, 3 Halsted, 39 ; Scanlan v. Porter, 1 Bailey, 437 ; Hart v. Thompson, 3 B. Monroe ; Thompson v. Daniel, 14 B. Monroe, 694, 696 ; Anderson v. Jackson, 16 Johnson, 383 ; Chester v. Greer, 5 Humphrey ; Booker v. Booker, 5 Humphrey ; Edwards v. Edwards, 2 Strobhart, 101 ; 1 Prest. on Est. 494.) The only restrictions upon these limitations were that they must take effect during the continuance of lives in being, or in twenty-one years afterwards. Under this view it is maintained that the limitations, first to the survivor, and then to the heirs of the grantors in the event that Howard and Edmund should die leaving no lawful heirs of their body as provided in the deed, would be good and pass the property accordingly, unless the contingency upon which the estate depends be too remote. And this depends upon the construction of the words " die without leaving legal heirs of their bodies" contained in the deed. If these words mean an indefinite failure of issue, the limitation over is void ; if they mean a failure at the time of the death of Edmund and Howard, they are good, as the contingency would then occur within the period prescribed by law. These words and other equivalent expressions, such as " dying without issue," " dying leaving no issue," " dying without heirs of the body," &c., have received both in England and America, in many cases, a construction that leaves no room for doubt that they refer to an indefinite failure of issue unless other words are interposed to restrict them to the time of death. It has been held that the word survivor had such an effect. When there is a limitation to two persons *in esse*, with remainder to the survivor, the contingency must in the nature of things occur within lives in being, and can not by possibility transgress the rule against perpetuities. The effect of the word " survivor" has been so elaborately discussed, from the case of Fosdick v. Cornell, 1

Johns. 440, and Anderson v. Jackson, 16 Johns. 382, to Edwards v. Varick, 5 Denio, 669, in the New York courts, and they have been so generally followed in Massachusetts, North Carolina, Kentucky, South Carolina, and other states, that it would be useless to examine the authorities in detail. In Cutter v. Dougherty, 23 Wend. 518, Mr. Justice Cowen remarked, when the point was raised, that it was too late in the day to raise such a question; that the word "survivor" limited the contingency as perfectly as the words " dying without issue living at the death" would do. This at present is the established current of decision in America, and the same principle has long been adopted by the courts of England in decisions in regard to real estate. (4 Kent, note, 278; Moore v. Lyons, 25 Wend. 119.) The word " survivor," in a limitation over, was declared in a devise of real estat to restrain the contingency properly, in the case of a fee upon a fee, and restrict it to a definite failure of issue, in the leading case of Pells v. Brown, and in a bequest of personal property, in Hughes v. Sayer, 1 P. Wm's, 534. These cases were followed in Porter v. Bradley, 3 Term Rep. 143, and in Roe v. Jeffery, 7 Term Rep. 589. New York adopted the same rule in Fosdick v. Cornell, 1 Johns. 439; Jackson v. Blanshau, 3 Johns. 289; Moffatt v. Strong, 10 Johns. 12; Jackson v. Staats, 11 Johns. 337; Jackson v. Anderson, 16 Johns. 382, and a long series of decisions down to the time of Edward v. Varrick, 5 Denio, 590, and Cutter v. Doughty, 23 Wend. 518; New Jersey, in Den v. Allaire, Spen. 6; and Massachusetts, in Richardson v. Noyes, 2 Mass. 56. The same rule prevails in South Carolina, (Keating v. Reynolds, 1 Bay, 80; Jones v. Price, 3 Desaus. 165; in Pennsylvania, in Hauer v. Shitz, 3 Yeates, 205; 2 Binney, 532; Coates v. Streel, 2 Ashmead, 21; Mifflin v. Neal, 6 S. & R. 461. Kentucky affirmed the case of Pells v. Brown, and Roe v. Jeffery, in Hart v. Thompson, 3 B. Mon. 487; and Tennessee, in Lewis v. Claiborne, 5 Yerger, 369, 375; Chester v. Greer, 5 Humph. 32, which arose on a deed; Booker v. Booke, 5 Humph. 505. Virginia has given effect in

like manner to the word "surviving," in Brooke v. Croxton, 2 Grattan, 506; Cordle v. Cordle, 6 Munford, 455. The whole current of authority is in the same channel, and the rule is now equally well settled in England and America, (Lee v. Stone, 1 Exchequer, 686,) and in the Supreme Court of the United States, in Jackson v. Chew, 12 Wheat. The language in both wills and deeds, in relation to such limitations, is subject to the same rules of construction, as remarked by Chancellor Kent, in Anderson v. Jackson, 16 Johns. 406. This word, however, applies only to one of the limitations, and it would follow that, although it rendered the limitation over to Howard, as survivor, good, yet there is no such word appearing to restrict the limitation over to the other legal heirs of William and Martha T. Christy to a definite failure of issue. The presence of the word survivor renders the first limitation good; its absence makes the ulterior limitation too remote, and consequently void. The difference is, that the first limitation is, by its terms, restricted to take effect during the lifetime of either Edmund or Howard, whoever should be the survivor; the other limitation having no such restriction, could by its terms take effect whenever there ceased to be legal heirs of the body of Howard and Edmund Christy, though after the lapse of centuries. The grantors in the limitation to the survivor intended one of two living men to take the property; in the limitation to the other legal heirs, they did not intend them to take until the blood of Howard and Edmund Christy was exhausted, although generations might have intervened. In the first limitation the intention of the grantors was lawful, as it contravened no rule of public policy; in the second it was unlawful as it might have rendered the property inalienable for ages. Not more than one fee can be limited after a prior fee simple, either by deed or will. The first executory limitation of a fee which vests destroys all subsequent limitations. The power of disposition is then exhausted. (Fearne, 515; Wilson on Springing Uses, Law Lib., vol. 2, ser. 4.) The inferior court, it is understood, decided that all the limitations over were upon an inde-

finite failure of issue and void, and rested its opinion upon Wilson v. Cockrill, and Guy v. Vaughn. There is no analogy between the terms of the gifts in those cases and in the limitations in the deed of 1832. There is no qualifying word "survivor," or any other expression in either of those cases to restrict the contingency; both of these decisions were in relation to slaves, not lands, and no rule is better settled than that after an absolute gift of chattels, if any words of inheritance be used such as " heirs," or " heirs of the body," no subsequent limitation can be superadded, even in a will. No remainder or contingent limitation, technically speaking, can be created in chattels or slaves. No contingent interest can be given in such property after a prior absolute gift. Slaves and personal property are not within the purview of the statute of uses, nor are there in relation to their transfer any of the feudal rules or principles which linger in our law of real property. For these reasons, it is believed that the cases of Wilson v. Cockrill and Guy v. Vaughn are not in point to show that the remainder to the survivor was void; but they are conclusive to show that the ulterior limitation to the other legal heirs of William and Martha Christy was upon an indefinite failure of issue. To sum up the conclusions upon this branch of the case, it is submitted, 1st, that the two lots conveyed to Howard Christy gave him an estate in fee simple therein, and that they passed to his widow, Susan P. Christy, by his devise; 2d, that the limitation to the survivor was not upon an indefinite failure of issue, and that upon the death of Edmund T. Christy his two lots passed to Howard F. Christy; 3d, that the limitation over to the other heirs of William and Martha Christy was upon an indefinite failure of issue, and was void.

II. The second instruction given to the jury was erroneous. Howard F. Christy was not estopped to deny that Mrs. Sweringen, as one of the heirs of William and Martha Christy, would have been entitled at the death of Howard to a " proportionate" share in the four lots conveyed to Edmund and Howard. (1 Saund. 37; Jacob v. Linsey, 1 East, ——; Sampson v. Coke,

5 Barn. & Ald. 606 ; Co. Litt. 252, *b.* ; 4 Pet. 496 ; Landes
v. Perkins, 12 Mo. 259 ; Osterhout v. Shoemaker, 3 Hill, 518 ;
Watkins v. Holm, 16 Peters, 54; Blight v. Rochester, 7
Wheat. 548 ; 1 Greenl. Ev. 23, 24, 25 ; 2 Smith's Lead.
Cas. 540 and notes ; Jackson v. Spear, 7 Wend. 401 ; Jack-
son v. Hopkins, 12 Wend. 105; Averill v. Wilson, 4 Barb.
180.)

III. The court erred in refusing to confine the damages within
the penalty of the bond.   (Briscoe v. King, Cro. Jac. 281 ;
Suffield v. Baskerville, 2 Mod. 36 ; Smith v. Stewart, 6 Blackf.
162 ; Drummond v. Richard, 2 Munf. 337 ; Culver v. Sissom,
3 Coms. 265; Bold v. Molineux, Dyer, 14 *b.* 17; 2 Parson
on Contracts, 22 note *v.* ; Shep. Touch. 375–7 ; 5 Rep. 216 ;
Sedgwick on Damages, 425 ; Crawford v. Woodward, 8 Mo.
353 ; 1 Mo. 79 ; United States v. Brown, Paine C. C. 422 ;
Hurlstone on Bonds, 7 ; 14 Barb. 242.)

The judgment of the court below should be reversed, 1st,
because by the limitations of the deed of 1832, Howard Chris-
ty, as survivor, was seized in fee simple at the time the deed
and bond of the 7th of October, 1842, were executed, and
Mrs. Sweringen having released nothing, is not entitled to any
damages, and because there was no breach of the condition of
the bond ; 2d, because, conceding the remainder over to the
heirs general to be good, yet the plaintiff was not entitled to
recover judgment beyond the penalty of the bond ; 3d, because,
even if Mrs. Sweringen were entitled, the judgment should not
have been for more than one-eighth of Edmund's two lots, or
one-half of a child's share, viz., one-sixteenth of the value of
the property, whereas it is for one-sixth ; 4th, because the
outstanding debts encumbering Edmund Christy's estate were
not deducted in computing the pretended interest of Mrs. Swer-
ingen ; 5th, because the interest in Edmund's share, which
Howard was entitled to as an heir at law, was not deducted in
ascertaining the value of Mrs. Sweringen's pretended interest ;
6th, because the administrators should not have been estopped
from denying the title of the obligees ; 7th, because parol tes-

timony was admitted to prove an agreement alleged in the peti-
tion to help the bond, and enlarge its obligations ; 8th, be-
cause there was no consideration for the bond.

*F. A. Dick*, for respondents.

I. The effect of the conveyance by William Christy to Ed-
mund T. Christy was to vest in him a defeasible fee simple
estate upon condition, and his estate was what at common
law, before the statute *de donis conditionalibus*, was called a
fee simple conditional. (2 Black's Com. 109, 154, 79, 164 ;
4 Kent Com. 9, 10, 11, 12, 353 ; 2 Cruise, tit. 13, ch. 1,
sec. 9, —— ; Shep. Touch. 117, 118, —— ; Geyer's Dig.
124–5 ; R. C. 1825, p. 216, 491 ; 1 Co. Litt. by Thomas, p.
587, 591 ; Martin v. Strachan, 5 Term Rep. 107.; Den v.
Schenck, 3 Halst. 29 ; Jackson v. Topping, 1 Wend. 388 ;
Morgan v. Morgan, 5 Day, 517.)

II. This estate being a fee simple, after it no remainder
could be limited, nor could there be any reversion ; there was
the mere possibility of a reverter to the grantor and his heirs,
if by the condition annexed to the fee the estate ceased in the
grantee ; and the condition in this case being, that the fee shall
be determined if Edmund T. Christy died leaving no heirs of
his body ; and as he died without leaving issue, the fee simple
was thus defeated, and the possibility of reverter became ope-
rative, and an existing estate, and by such estate the heirs of
William Christy took the land of Edmund in fee upon his death.
(4 Kent Com. 10, 16, 17, 199, 200, 269.)

III. Howard's lots were vested in him in like manner, with
like estate, and on his decease passed by reverter to the heirs
of the grantor. There was no estate in perpetuity intended to
be given to Howard.

IV. There was no cross remainder of Edmund's lots to
Howard, such not being admissible by the rules of law after a
fee given to Edmund.

V. The parties in 1842 agreed for valuable consideration
upon the construction of the deed of William Christy of 1832 ;
such construction is an essential part of the contract then made,

and is not an open question. Howard F. Christy, as one party to the contract, and the other heirs of William Christy as the other parties, having in 1842 put a practical construction on the facts in this case, and Mrs. Sweringen having actually relinquished and conveyed an interest in two of the lots, for which she then received no pay, nor was to receive any unless Howard died childless, and the parties agreeing if he did so die by the effect of the deed of William Christy she would be part owner of all the lots, such construction becomes part of a contract, and Howard Christy having enjoyed for the remainder of his life the benefit of the concession made to him, it can not now be denied that the part disadvantageous to him is effectual and binding. (Taylor & Mason v. Zepp, 14 Mo. 482 ; Dezell v. Odell, 3 Hill, N. Y., p. 215 ; Page & Bacon v. Butler, 15 Mo. 73 ; 9 Mo. 156 ; 15 Pick. 40.)

VI. The evidence of the plaintiff is competent in law to prove the facts fixing the liability of Howard F. Christy. (1 Greenl. Ev. § 268 ; Gale v. Nixon, 6 Cowen, 445 ; 2 Phil. Ev. 353 ; 13 Mo. 152; 9 Mo. 156 ; 15 Mo. 160 ; 17 Mo. 58.)

Scott, Judge, delivered the opinion of the court.

The deed of William Christy and his wife, bearing date the 20th of September, 1832, conveying lots to their two sons Howard and Edmund, contained these words : " to have and to hold the premises aforesaid, with all the appurtenances thereto belonging, to them and their heirs forever, upon condition that should either of the grantees herein named die without leaving legal heirs of their body, the survivor shall inherit the whole of the property hereby conveyed ; and should both die without leaving legal heirs as aforesaid, the property hereby conveyed shall revert to the other legal heirs of the said William and Martha T." The lots referred to in the deed were conveyed by separate metes and bounds, two to Howard and two to Edmund.

It is laid down in the books as settled that conveyances to uses are to be construed in the same manner as deeds deriving their

effect from the common law. For, since the statute of uses, a use is turned into a legal estate to all intents and purposes; it must be conveyed exactly in the same manner and by the same words. (Cruise, tit. Deed, ch. 20, sec. 71, 72.) There is no use declared in that part of the deed whose construction is involved in this controversy affecting the question before us. The deed is a common bargain and sale, operating under the statute of uses, without any declaration of trusts or uses, and is consequently more clearly comprehended within the rule just stated than any others.

The limitations of the deed of William Christy and his wife being construed in reference to the rules of the common law, nothing is clearer than that Howard and Edmund Christy severally took estates in tail in the lots granted to them. There is a universal concurrence among law-writers that a gift to a man and his heirs, and if he shall die without heirs of his body then to others, conveys an estate tail. (2 Prest. on Est. 4, 504; ·Cruise, tit. Deed, ch. 21, sec. 81; Crabbe's Law of Real Property, § 975.)

Here then are estates tail created. So soon as that was done those estates became subject to the operation of the 4th section of the act regulating conveyances, approved February 14, 1825, which provides that " in cases where by the common law any person or persons would now be, or might hereafter become, seized in fee tail of any lands, tenements or hereditaments by virtue of any devise, gift, grant or other conveyance heretofore made or hereafter to be made, or by any other means whatsoever, such person or persons, instead of being or becoming seized thereof in fee tail, shall be deemed and adjudged to be and become seized thereof for his or her natural life only; and the remainder shall pass in fee simple absolute to the person or persons to whom the estate tail would on the death of the first grantee, devisee, or donee in tail first pass according to the course of the common law, by virtue of such devise, gift, grant or conveyance." By this it will be seen that so soon as an estate tail is created, that estate is destroyed and another is sub-

stituted for it.   It is done immediately upon the creation of the estate tail without any postponement.   Now neither Howard nor Edmund had heirs of his body when the deed was executed, and the entail created ; consequently the remainder could not vest in the issue of either of them.

Here a question arises, whether by the terms of the act, above recited, the remainder therein mentioned can vest in any other person than one who by the course of the common law would be an heir to the estate tail had the estate not been destroyed. There is nothing in the terms of the act which shows that it was not designed to destroy all estates tail.   Entails were not congenial to our institutions, and the act was intended to break them up.   If none but those who would have been heirs of the entail were intended, then it is obvious that the statute would not reach any of those cases in which the first grantee in tail had no issue. We are not warranted in supposing that the legislature only intended to break up particular entails.   The reason that would break up one would break up all others.   We do not see anything in the words of the act that requires this restricted construction.   The statute says, the remainder shall pass to the person to whom the estate tail would on the death of the first grantee in tail first pass according to the course of the common law by virtue of the grant.   It is true, as the first taker of the estate tail had no heir in the case supposed, it was uncertain at the creation of that estate whether the entailed estate would ultimately vest in the heir in tail or in him who was to take in the event there was no heir.   But there is no reason why this uncertainty as to the person who would be the first taker of the entailed estate should render the statute nugatory.   The uncertainty was between two whom the grantors preferred to all others.   If one could not take, it was intended that the other should.   Bearing in mind that there was no reason why one estate tail should not be abolished as well as another, the words employed in the act sufficiently indicate that another than the heir in tail may be the first taker according to the course of the common law by virtue of the grant.   Had the general as-

sembly designed that the heir in tail alone should be the first taker, why speak of the person to whom the estate would first pass by virtue of the devise, gift, grant or conveyance? After giving a life estate to the first grantee in tail, how much more compendious and appropriate would it have been to have said that the heir of such grantee shall have the fee simple or take the estate as purchaser? The language used could only have been employed on the supposition that, limiting the fee simple to the heir in tail alone, there would be cases which would escape the operation of the statute.

As we maintain that another than the heir in tail may be the first taker of the entailed estate after the death of the first grantee in tail, the question arises as to the manner in which the fee simple is to be disposed of, when, as in the case before us, the first grantee in tail has no heir at the creation of the estate tail, but the remainderman is in existence to whom the estate is to pass in the event that the first grantee of the estate tail dies without issue. Is the fee simple in abeyance; or does it pass to the remainderman, subject to be divested by the birth of issue of the first grantee of the estate tail? We are of the opinion that the fee simple passes to the remainder, subject to be divested by the birth of issue of the first grantee of the estate tail. Such a construction of the act seems to be necessary in order to avoid the mischief that would ensue from a contrary interpretation. If the fee simple was judged to be in abeyance, the circumstances of this case furnish an instance in which the fee simple would be lost or confiscated. Edmund Christy, as remainderman, dying when the fee was in abeyance, before the death of Howard, who was childless, there would be no person to whom the fee could pass. His heirs could not take as such, as there had been no interest or estate in him. The fee simple having never vested in Edmund, there would be nothing in him that was transmissible by descent. If his heirs took at all it must be as purchasers. There was nothing remaining in the grantors of the entail. Their whole estate passed by their deed. The fee simple then must have escheated, as there would be

no person to take it, the words of the act clearly showing that none but he, to whom the estate tail would first pass after the death of the first grantee in tail, according to the course of the common law, by virtue of the devise, gift, grant or conveyance, can be a taker of the fee simple. The language used indicates that it was intended that the fee simple should pass presently. It is in harmony with the spirit of the act to make the fee simple pass upon the creation of the estate tail. The first taker, whoever he may be, will have the immediate power of disposal. If he is another than the heir in tail, he may alien, subject to the contingency of being divested by the birth of issue of the first grantee of the estate tail.

It was intimated that the estates of Howard and Edmund Christy being entails only by implication, the court should not, in construing the fourth section of the act regulating conveyances, raise an estate tail in order that it might be destroyed. If it was conceded that those estates were such, yet they would be comprehended within the words of the act. We are required to ascertain whether the estate would by the common law be an entail. Whether it be an express estate tail, or one by implication, it is equally an entail within the statute. But the answer to this objection is that the implication cuts down what would otherwise be a fee simple, and leaves Howard Christy the quantum of interest he would take by making it an entail. The only difference is that he would take his own instead of Edmund's lots.

In construing the deed of William and Martha Christy, we have not deemed it our duty to regard their intention. It is unquestionably a maxim of our law that all deeds shall be construed favorably and as near the apparent intention of the parties as possible consistently with the rules of law. If, however, the intention of the parties is contrary to the rules of the law, it will then be otherwise ; for it would be highly improper and inconvenient to permit private persons to contradict the general rules of law. (Cruise Dig. tit. Deed.) The parties have created an estate tail against the policy of the law ; the

statute has declared that such estates shall not exist, and has prescribed the disposition which shall be made of them. Now in dealing with the subject it is obviously the duty of the courts to regard the intent of the legislature and not that of the parties. The construction given to the act is not designed for the circumstances of this particular case only, but for all others which may arise.

The result to which we come, deduced from what has been said, is that Howard Christy took an estate for life in his two lots, with a right to the fee simple in Edmund's two lots if he died without children; and that Edmund took an estate for life in his two lots, with a right to the fee simple in Howard's two lots if he died without children. As Howard died without children, the fee simple which vested in Edmund descended on his death to his heirs, and continued in them, of whom Howard is one; and as Edmund died without children, the fee simple of his lots which vested in Howard continued in him, and was subject to his absolute disposal. So Howard became entitled absolutely to Edmund's two lots, and to an heir's share in his own two lots, derived by inheritance from Edmund. We can see no reason whatever for treating Edmund's right to the fee simple in Howard's lots in a manner different from that in which Howard's right to the fee simple in Edmund's two lots is treated.

We are of the opinion that there is no estoppel of the defendants. The case, as presented, shows that there was a disagreement or doubt as to the proper construction of the deed of 1832. As the rights of the parties under that deed would be fixed at the death of Howard (Edmund being dead) it was agreed that they should convey their interest in the four lots to Howard, he paying to the plaintiffs the value of any interest in them they might convey, to be ascertained at the death of Howard. Taking all parts of the bond together, we can not avoid the conclusion that such was the intention and understanding of the parties. If it was supposed by the parties that they had agreed with Howard that upon his death, without issue, the heirs of

William Christy should have the entire property in the four lots, it would never have been written in the condition of the bond : " Now, if the said contingency in the first deed mentioned shall happen, whereby the said obligees or their heirs would have been entitled by virtue of said first mentioned deed to said property, *or any part thereof, or any interest in the same,* had not said release been executed, and the said Howard F. Christy, &c., shall well and truly pay to the said James T. Sweringen and Martha his wife, &c., the value, at the time of happening of said contingency, of the portion, part or interest which the said Sweringen and wife, their heirs, &c., would have been entitled to in said property in said first deed described by virtue of said deed, had not the said release been executed, then this obligation shall be void," &c.   If the parties had fixed it as the agreement that upon the death of Howard, without issue, the whole estate should pass to the heirs of William Christy, could they not have expressed themselves in language very different from that employed ?   The words, to have been consistent with such an idea, would have been that Howard Christy should pay the value of their share or portion in the property or the four lots.   Had the compromise supposed been made, the share or portion of Sweringen and wife in the property would have been ascertained ; and the words " or any part thereof, or any interest in the same," are inconsistent with the notion that there had been any adjustment of their interest. Had the parties agreed upon an interpretation which, in their opinion, might be different from that the deed would receive as it came from the hands of the grantors, would they have provided that Sweringen and wife should be paid the value of the interest which they would have been entitled to in said property in said first deed described *by virtue of said deed ?* If they supposed they had altered the construction of the original deed, could they not have provided for the payment of the value of the interest according to the agreed construction, and not their interest by virtue of the original deed ?   The language in the latter part of the condition above cited sufficiently indicates that

the recital, " whereas, upon the happening of certain contingencies in said deed mentioned and contained, the said property, lots and parcels of ground therein specified would, by the terms of said deed, revert and belong to the heirs of the said grantors in said deed," &c., was not intended to fix the construction of the deed of 1832, but was only intended as a recital of its terms, leaving the effect of the whole deed to be ascertained at the death of Howard.

It has been twice decided by this court that an action of covenant will not lie on a penal bond with collateral condition. (1 Mo. 79 ; Crawford v. Wooodward, 8 Mo. 353.) If covenant will not lie on the condition, then the parties are limited in their recovery to the penalty. In the case of Lowe v. Peers, 4 Burr. 2225, Lord Mansfield said, " there is a difference between covenants in general and covenants secured by a penalty or forfeiture ; in the latter case the obligee has his election ; he may either bring an action of debt for the penalty and recover, or if he does not choose to go for the penalty he may proceed upon the covenant and recover more or less than the penalty." This was in an action of covenant brought on an instrument whereby the defendant promised to the plaintiff not to marry any other person than herself, and agreed to pay the plaintiff £1000 if he married any one else. The case of Martin v. Taylor, 1 Wash. C. C. ——, in which Washington, J., uses language of similar import to that of Lord Mansfield above cited, was on a covenant whose performance was secured by a penalty similar in every respect to the case in Burrows. The instrument between these parties is unlike those in the controversies above cited. Here there is no covenant. Sedgwick, in speaking on this subject, says, " but in the condition of a bond to do or refrain from any particular act secured by a given penalty, does any agreement appear absolutely to do the act or to respond in indefinite damages ? Practically we know that it is not so understood. The obligor always considers the penalty as limiting the extent of his obligation." (Sedg. on Dam. 426.) According to the decisions heretofore made by this court, the

plaintiffs will be limited in their recovery to the penalty, and most sue on the instrument. Judge Ryland concurring, the judgment will be reversed, and the cause remanded.