.MILLER et al. v. ENSMINGER et al., Appellants.

Division Two, May 31, 1904.

1. **DEVISE: To Child and Bodily Heirs.** Under the statute of 1855 a devise to a son and "his bodily heirs forever" created an estate tail, which, by the disposition of the statute, was an estate for life in the son, and upon the death of the son the property descended in fee to his descendants living at the time of his death.

2. ———: **Bodily Heirs and Heirs of the Body.** There is no difference in law between the words "bodily heirs" and "heirs of the body."

3. ———: **Devise to Son and Bodily Heirs: Personalty and Realty.** The giving in the same item of the will of personal as well as real property to a son and "his bodily heirs" will not enlarge the plainly created life estate of the son into an absolute estate in fee.

4. ———: **The Word "Forever."** The use of the word "forever" in a devise to a son and "his bodily heirs forever," is not significant of the character of the estate created.

5. ———: **Intention.** Where the intention of the testator as ascertained from the will violates the plain principles of the law, that intention will not control in the interpretation of the will.

Appeal from Marion Circuit Court.—*Hon. D. H. Eby,*
Judge.

AFFIRMED.

*W. M. Boulware* for appellants.

(1)  The duty to ascertain and make effective the
"true intent and meaning" of testatrix has been made
in this State the subject of positive statutory require-
ment.  R. S. 1899, sec. 4650.  The explanatory clause
whereby the entire intent of testatrix is expressed will
be adopted by the court as conclusively showing her
intention, and will be followed in determining the legal
effect of the instrument.  Small v. Field, 102 Mo. 128.
(2)  In this case the explanatory clause, covering, as it
does, the whole estate, and expressing, as it does, the
entire will in regard thereto and the disposition thereof,
is substantially the will.  Even if the condition requir-
ing the death of the devisee Frederick before receiving
his share of the estate, was wanting, and even if the
terms of the will failed to express the fact that the fail-
ure of issue contemplated was a failure at the time of
the death, and not an indefinite failure—even in that
state of case the judgment of this court in Yocum v.
Siler, 160 Mo. 281, would be decisive against the claim
of estate tail.  That judgment is grounded upon the fact
that our statute had fixed the meaning of "dying with-
out issue" to be "dying without issue living at the time
of the death of the person named as ancestor," and had
thus cut away the foundation upon which the doctrine
of constructive fee tail  rested as the result of a devise
over on condition of the devisee "dying without issue."
This court in Farrar v. Christy, 24 Mo. 453 (followed
in 58 Mo. 147), in ruling upon a deed made before the
passage of the statute referred to, held that a condition
in a deed whereby the estate was granted over in case
the grantee (the first taker) shall die without heirs of his

body (or similar words) would create an estate tail. The more modern American decisions do not sustain this view. They hold that in the case described the donee is vested with a fee simple, subject to be defeated by the condition of his death without issue, with executory devise over on his death without leaving issue surviving him. Many early cases so held. It was so held by the Supreme Court of Massachusetts as early as 1806. Pate v. French (Ind.), 23 N. E. 673; Summers v. Smith (Ill.), 21 N. E. 191; Wilson v. Wilson (N. J.), 19 Atl. 132; De Wolf v. Middleton (R. I.), 26 Atl. 44; Bachus v. Pres. Assn., 25 Atl. 856; Boling v. Miller (Ind.), 33 N. E. 354; Chaplin v. Doty (Vt.), 15 Atl. 362; Patterson v. Earhart (Ohio Com. Pl.), 29 Weekly Law Bul. 313. (3) From the terms of the will itself a clear inference arises that the failure of issue contemplated as the condition of the devise over, was not an indefinite failure of issue, but a failure of issue living at the time of the death of the first taker, Frederick. "If either . . . should die without leaving a surviving bodily heir or heirs" are the words of the first clause. "If either should die childless," are the words of the second clause. The meaning of these words can not be fairly questioned. The use of the words "leaving" and "surviving," as thus related, is common and familiar. They are used in every proceeding in which it is necessary to allege an heirship. The clear import of the deeds is that said Frederick shall at the time of his death have living issue of his body. (4) It is a settled rule of American law that, in the absence of an intent to the contrary, expressed in terms or abiding by necessary implication in the provisions of the will, the death contemplated by a condition to an immediate devise, to the effect that in case of the death of the devisee without bodily heirs or issue, the estate shall go over, is the death of the devisee during the lifetime of the testator, and in such case the devisee is vested with the full fee. The following authorities are decisive of this

point: Wright v. Charley (Ind.), 28 N. E. 706; Stokes v. Weston, 37 N. E. 515 (142 N. Y. 433); Burdge v. Walling (N. J.), 16 Atl. 51; King v. Trick (Pa.), 19 Atl. 951; Jones v. Webb, 5 Del. Ch. 132; Brown v. Lippincott (N. J. Ch.), 23 Atl. 497; Rickards v. Gray, 6 Hous. (Del.) 232; Robinson's Estate (Pa.), 22 Atl. 297; Morrison v. Truby (Pa.), 22 Atl. 972; Benson v. Corbin (N. Y.), 78 Hun 202. (5) The terms used in said second clause of fifth item, "It being my wish and intention after the payment of my debts . . . that the remainder of my estate of every description shall be equally divided between my aforesaid two children," would pass to them the full fee. Aside from our statute on this subject (R. S. 1855, p. 1574, sec. 46), the provision would so operate at common law. "The remainder of my estate of every description" means all testatrix's title or estate in all her property. 1 Redfield, Wills, 460-1; 2 Ib., 709, 710, 719, 738, 728, 748.

*John W. Matson* for respondents.

Under and by virtue of Revised Statutes 1855, vol. 1, chap. 32, secs. 5 and 6, and the construction given to said sections and to wills and conveyances similar to this one, Mary Conroy, by her will, devised the property in controversy to said Frederick W. Miller for life, remainder in fee to his surviving issue and their assigns. Godman v. Simmons, 113 Mo. 122; Bone v. Tyrell, 113 Mo. 175; Clarkson v. Clarkson, 125 Mo. 381. The last two cases and the one following construes the statute of 1855, chapter 32, section 5, the law in force at death of Mrs. Conroy. Phillips v. La Forge, 89 Mo. 72; Wood v. Kice, 103 Mo. 329; Reed v. Lane, 122 Mo. 311; Cross v. Hoch, 149 Mo. 325; Hunter v. Patterson, 142 Mo. 310; Bramell v. Cole, 136 Mo. 210. The remainder over in the event Miller had died without leaving bodily heirs, was good, but does not affect this case, as he died leaving issue of his body surviving him. Thompson v.

Craig, 64 Mo. 312; Farrar v. Christy, 24 Mo. 453; Harbison v. Swan, 58 Mo. 147; Gates v. Seibert, 157 Mo. 254. The rule for construing wills and deeds is substantially the same. Walton v. Drumtra, 152 Mo. 489; Garth v. Garth, 139 Mo. 456. The fact that the will bequeaths personal property by the same language it devises the realty does not change the interpretation of the devise of the realty. Childs v. Bartleson, 21 Mo. 344; Corby v. Corby, 85 Mo. 371; Lewis v. Pitman, 101 Mo. 281; Schorr v. Carter, 120 Mo. 409; Bramell v. Cole, 136 Mo. 210.

FOX, J.—This appeal is from a judgment rendered in the circuit court of Marion county in an action of ejectment by the plaintiffs against the defendant.

Plaintiffs, with the exception of John W. Matson, are the surviving children of Frederick Miller, and their title is based upon the provisions of the last will of Mrs. Mary Conroy; Matson claims by deed from the other plaintiffs one-third interest of the land in controversy. Defendants claim title through Frederick Miller, plaintiffs' ancestor.

It is conceded by counsel representing all the parties to this controversy, that there is but one question for solution, and that is, the character of estate devised to Frederick W. Miller by the provisions of the will of Mrs. Conroy. The proper interpretation of this will being the only question before us, it is appropriate to reproduce it. It is as follows, omitting the conclusion:

"I, Mary Conroy of the county of Marion in the State of Missouri, being now of sound and disposing mind and memory, do make and publish this as and for my last will and testament.

"Item First. It is my will that after my death the expenses of my funeral and last sickness and all my just debts be fully paid.

"Item Second. I will, order and direct that after the payment of the expenses of my funeral and last sick-

ness and all my just debts, there is next to be paid to my son, Frederick W. Miller, the sum of two hundred dollars, being the amount of money he deposited with me for safekeeping.

"Item Third. I give and bequeath to my daughter Henrietta F. V. Brawner, and to her bodily heirs forever, the one undivided half of lot six in block twenty in the city of Palmyra in Marion county, Missouri, and also the one undivided half of any other real or personal property of which I may die possessed, including money on hand and debts that may be due or to become due to me at the time of my death, that may remain after the payment of the debts and expenses referred to in the first and second items hereof.

"Item Fourth. I give and bequeath to my son, Frederick W. Miller, and his bodily heirs forever, the one undivided half of lot six in block twenty in the city of Palmyra in Marion county, Missouri, and also the one undivided half of any other real or personal property of which I may die possessed including money on hand and debts that may be due or to become due to me at the time of my death, which may remain after the payment of the expenses and debts referred to in the first and second items hereof.

"Item Fifth. If either of my aforesaid children should die without leaving a surviving bodily heir or heirs, before receiving its share or interest in my estate herein bequeathed to it, or any part thereof, then and in that case I order and direct that said interest or share, or such part thereof as it may not have received shall descend to and vest in my surviving child and its bodily heirs forever, it being my wish and intention, after the payment of my debts and the expenses hereinbefore referred to, that the remainder of my estate of every description shall be equally divided between my two aforesaid children, and that if either should die childless before receiving its share of my estate, or any part thereof, that its share or such part as it may not

have received, shall descend to and vest in my surviving child or its bodily heirs forever.

"Item Sixth. I hereby constitute and appoint Alexander W. Rush of Marion county, Missouri, executor of this my last will and testament with full power and authority to execute and carry the same into effect."

Upon the submission of this cause to the trial court, judgment was rendered in favor of the plaintiffs; from this judgment this appeal was prosecuted, and the record is now before us for review.

## OPINION.

The proposition before us, as disclosed by this record, is sharply and concisely presented. It is this: Appellants contend that the provisions of this will, correctly interpreted, devised to Frederick W. Miller an absolute estate, hence defendants' title which emanated from him, is the true legal title, and that they were entitled to recover in this action. On the other hand, respondents contend that the estate devised to Miller by the will was a fee tail, which, under the statute, was a life estate, with remainder in fee to his children living at the time of his death, and that they were the surviving children of Miller and hence they are entitled to recover.

This is the proposition confronting us, and from a fair and reasonable interpretation of the law applicable to it, we must find its solution.

The subject involved in this dispute is one about which volumes have been written, and should we undertake to review all that has been said touching it, it would require a volume to approach anywhere near the accomplishment of the task. We must be content with a brief review of the leading cases applicable to the interpretation of the provisions of this will.

Mrs. Conroy died in February, 1863, hence the law in force at the time of her death must control in the

interpretation of this will. As applicable to the question before us, sections 5, 6, and 7, chapter 32, pages 355, 356, Revised Statutes 1855, were in force at the date of the death of Mrs. Conroy.

Section 5 simply had the effect of creating out of such devises as, under the statute of the thirteenth of Edward the first (called the statute of entails), would have been an estate in fee tail, an estate for life.

Sections 6 and 7 made the following provisions:

"Sec. 6. Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor.

"Sec. 7. Where a remainder shall be limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heirs, or heirs of the body of such tenant for life, shall be entitled to take as purchasers, by virtue of the remainder so limited in them."

We are not left without light in the investigation and consideration of the proposition involved, for counsel on both sides of this case are to be congratulated upon the careful and able presentation of the question in their briefs before us. In the determination of this controversy, we shall not be unmindful of that principle, which is fundamental in the interpretation of wills, that the intent of the testator or testatrix must be ascertained from a consideration of the entire instrument, and that intention should be given its full effect, unless it contravenes plain and settled rules of law; and it is with a clear conception of this just and fundamental principle, that we approach the consideration of the proposition confronting us.

Our attention will be first directed to clause four of this will, in which the devise is made to Miller. It pro-

vides thus: "I give and bequeath to my son Frederick W. Miller and his bodily heirs forever," then follows the designation of property, which includes the land in dispute. This presents the first question.

By the terms of that devise, what was the nature and character of estate created? In answering that question, we shall not undertake to review the cases in other jurisdictions, for, as has been well demonstrated by counsel for appellants, the authorities can not be entirely harmonized; but we will simply say, if the long and unbroken line of expression by this court on this question is to be our guide, then it is no longer an open question as to the estate created by the terms of the devise under discussion. It was an estate tail, which, by disposition of the statute, was an estate for life and upon the death of Frederick W. Miller descended in fee to his children living at the time of his death. This conclusion finds support in all the cases in which this subject was before the court, commencing with the early case of Farrar v. Christy, 24 Mo. 453, down to the present time. [Charles v. Patch, 87 Mo. 450; Phillips v. La Forge, 89 Mo. 72; Wood v. Kice, 103 Mo. 329; Reed v. Lane, 122 Mo. 311; Hunter v. Patterson, 142 Mo. 310; Clarkson v. Clarkson, 125 Mo. 381.]

It was said by this court in Bone v. Tyrrell, 113 Mo. l. c. 182, in discussing a devise similar to the one in the case at bar, that: "The grant in the devise is to Elizabeth Bone, and standing alone under the statute would have been sufficient to pass the fee simple title of the grantor to her; but this grant, being immediately limited by a *habendum* clause, 'to her and her children, heirs of her body, forever,' had the effect of passing to her only an estate in fee tail under the statute of thirteenth Edward the first, which under the statute of this State became an estate for life in the said Elizabeth, remainder in fee simple to her children." It is significant that nearly all the cases herein cited refer with approval to Farrar v. Christy, supra.

It is insisted by counsel for appellant that the cases cited supporting the conclusion reached upon the fourth clause of this will, are distinguished from the case before us in the use of the terms "bodily heirs," instead of the strict technical terms "heirs of his body."

The case of Clarkson v. Clarkson, supra, furnishes a complete answer to that suggestion. The terms used in the conveyance in the Clarkson case were identical with those of the devise in this will. Jabez Clarkson, by a warranty deed dated the ninth of November, 1858, conveyed the land to "John Clarkson and his bodily heirs." BLACK, J., gave the proposition in that case very careful consideration; in discussing and disposing of the question, he said:

"The first question to be determined is, whether the words 'bodily heirs,' as used in this deed, created an estate tail, or a fee simple. A conveyance or devise to a person and the heirs of his body creates an estate tail. [Chiles v. Bartleson, 21 Mo. 344; Phillips v. La Forge, 89 Mo. 72; Wood v. Kice, 103 Mo. 329.] Says Washburn: 'The statute *de donis* was regarded by the courts as a remedial one, and, instead of confining it to the precise cases enumerated in it, they regarded these as put by way of example.' [1 Wash. on Real Prop. (5 Ed.), p. 100.] The same author says: 'It is, therefore, requisite, in order to create such an estate, that, in addition to the word heirs, there should be words of procreation which indicate the body from which these heirs are to proceed, or the person by whom begotten. If this is done, it may not be necessary to make use of the words "of the body" if, by the description, it appears that they are to be the issue of a particular person. A general limitation to a man and the heirs of his body is sufficient, it being immaterial of whom begotten.' [Ibid, 107; Tiedeman on Real Property (Enlarged Ed.), sec. 47.] Sometimes an estate tail is created by implication. Thus, it was said in Farrar v. Christy, 24 Mo. 468, 'there is a universal concurrence among law writers that a gift

to a man and his heirs, and, if he shall die without heirs of his body, then to others, conveys an estate tail.' There is no substantial difference between the words 'heirs of his body' and 'bodily heirs.' They are all words of limitation, and not of purchase, and the latter have the same meaning as the former, unless there is something in the instrument to show that the donor used them in some other than their technical sense.

"In the cases of Righter v. Forrester, 1 Bush 278, and Mitchell v. Simpson, 10 S. W. (Ky.), 372, the words 'bodily heirs' were used in wills and were construed to mean children, when taken in connection with other parts of the instruments. These cases both proceed on the proposition that 'bodily heirs' are proper words of limitation, and create an estate tail, which the statute of that State converts into a fee simple unless it appears from the entire will that the testator did not use the words in their technical sense. So it was said in Donnell v. Mateer, 5 Ired. Eq. (N. C.) 9: 'But there is nothing in the context here, to control the technical meaning of the term "bodily heirs;" and therefore, we are obliged to receive them in that sense, as meaning that class of persons who, by law, take property by inheritance or succession from another. Thus understood, they are not words of purchase, but of limitation, in dispositions of this kind, as well in conveyances of land.' These cases are all authorities for, instead of against, the proposition that the words 'bodily heirs,' as used in the deed in question, create an estate tail; for there is not a word in the whole deed to show or indicate that the donor used them in any other than their technical sense. Our conclusion is that this deed created an estate tail. Our statute converted that estate, as soon as created, into a life estate in John Clarkson, remainder in fee to his children."

It is apparent that if the conclusions reached in that case, upon the suggestion as to the distinction to be drawn in the use of the terms "bodily heirs" and "heirs

of his body,'' are to be adopted, it is decisive of the question presented in this cause. We are impressed with the soundness of the reasons urged in support of the final conclusion reached in that case and see no reason to depart from it.

It is also urged that the fourth clause of the will, by the same language, bequeaths personal as well as real estate and that this fact is important in the interpretation of the clause as to the character of estate intended to be created in the land. We are of the opinion that the mere fact of including personal estate in this clause, by language which so clearly creates only a life estate, would not warrant the deduction of an intention to create a larger estate to the lands included in the devise.

BURGESS, J., in Schorr v. Carter, 120 Mo. l. c. 413, which involved the interpretation of a devise in a will, including both personal and real estate, in reviewing the case of Chiles v. Bartleson, 21 Mo. 344, said: "The will that was before the court for construction contained the following provisions:

" 'Section 3. I will and bequeath unto my beloved wife, Frances Bartleson, my negro man, Charles, his wife, Clara, and their four children, and all of my lands, with the appurtenances thereunto belonging, with a sufficiency of stock to support the farm. . . . Section 8. And, further, after the above and foregoing bequests have been complied with, then out of the remainder of my estate, it is my will that the bequests made to my four children shall be made equal, according to my estimate, valued agreeably to their several bequests; the residue of my estate to be equally divided between my wife and four children. And, further, it is my will that the bequests made to my wife, Frances, at her death, be equally divided between my four children.'

"It was held that the intention of the testator manifestly was to give the land to his wife during her life only, with remainder to his children. It will be observed that the third section of that will gave the personal and

real estate to the wife without saying during her natural life, while the eighth section provides that the bequests made to the wife, at her death, be equally divided among the testator's four children; yet it was held that the wife only took a life estate in the land.''

If the repeated adjudications by this court upon the subject are any longer to be regarded as the rule in the interpretation of wills, then there is no escape from the· conclusion that the terms ''to my son Frederick W. Miller and his bodily heirs forever,'' created, under the statute of thirteenth Edward the first, an estate in fee tail, which, under the statute of this State, is converted to an estate for life.

It is earnestly contended by appellant that the term ''forever,'' following the operative words, ''to Frederick W. Miller and his bodily heirs,'' is significant in the interpretation of the character of estate created.

In the cases of Bone v. Tyrrell, supra, and Godman v. Simmons, 113 Mo. 122, the same term ''forever'' was used, and yet the same construction, that only a life estate was devised, was adhered to.

The case of Fanning v. Doan, 128 Mo. 323, is cited as supporting this contention upon the use of the term ''forever.'' An analysis of that case clearly demonstrates the distinction between it and the one before us; the recital in the Doan deed was a conveyance to ''Sarah A. Doan and her heirs by John Doan, their heirs and assigns forever.'' It is clear that had this recital concluded with ''Sarah Doan and her heirs by John Doan,'' even with the term ''forever,'' it would have only created, by virtue of the statute, a life estate; it will be noted that it was the additional words, ''their heirs and assigns forever,'' which created an estate in fee in Mrs. Doan and her children as tenants in common. The terms ''her heirs by John Doan'' in that conveyance, were treated properly as words of description instead of limitation, the word ''heirs'' being used in the sense of children. With this treatment of the lan-

guage, every word is given full force and effect, and the grant would read thus: ''Sarah Doan and her children by John Doan, their heirs and assigns forever,'' which, beyond question, created an estate in fee. That is not this case, and that the terms used in the devise before us are not susceptible of such interpretation, we think is too plain for discussion.

This leaves us to the consideration of the only remaining proposition in this case, and that is, does clause five in the will furnish any explanation of the character of estate intended to be created by clause four; or, to more clearly state the proposition, does clause five indicate an intention of creating an estate by the devise in clause four, different or a larger estate, than the words standing alone would accomplish?

We have given to clause five of this will our careful consideration, and from it we are unable to find in the terms of the clause any indication of a different intention in respect to the disposition of the land in controversy, than the terms used in the fourth clause clearly import. In fact, a careful analysis of the language employed in the fifth clause emphasizes the intention of the testatrix as expressed by the language in the fourth clause.

This entire will considered, indicates first, that the testatrix entertained great solicitude for the welfare of the issue of her two children, and from the terms used throughout the entire instrument, so far as the disposition of her property was concerned, she intended at the death of her two children that the surviving issue should have it, and if language is of any force, she indicates clearly that she was not willing to rely upon the probability that such issue would, in the ordinary course of the law, inherit such property from their parents; hence she used such terms in the disposition of her property, as left no doubt as to where the title to her property should vest upon the death of her children.

The fifth clause of this will does not warrant an

interpretation of the fourth clause which destroys the force and effect of the terms used; but it is clear that clause five was intended to provide for a condition that might exist at the death of her children, and was not intended as an explanation or in the slightest degree to change the nature of the estate created, surrounded by the conditions in fact existing at the death of her children.

Her son died, leaving "bodily heirs," as contemplated by the will, and as the conditions provided for in clause five did not arise, it in no way affects the force and legal effect of clause four.

If the testatrix in this will intended to devise an absolute estate to her son, she has failed to express it, or indicate in any of the provisions of the will such intention; if such in fact was her intention, it is unfortunate. We can only repeat in respect to that, the appropriate language of Judge Scott in Farrar v. Christy:

"It is unquestionably a maxim of our law that all deeds shall be construed favorably and as near the apparent intention of the parties as possible, consistently with the rules of law. If, however, the intention of the parties is contrary to the rules of law, it will then be otherwise; for it would be highly inconvenient and improper to permit private persons to contradict the general rules of law. The parties have created an estate tail against the policy of the law; the statute has declared that such estates shall not exist, and has prescribed the disposition of them. Now in dealing with the subject, it is obviously the duty of the courts to regard the intention of the Legislature, and not that of the parties. The construction of the act is not designed for the circumstances of this particular case only, but for all others that may arise."

The judgment in this cause is affirmed. All concur.