HUNTER *et al.*, *Appellants*, v. PATTERSON *et al.*

### Division One, January 18, 1898.

1. **Equity:** CORRECTING MISTAKES IN DEEDS. Where a mistake in the description of a piece of land is mutual as to grantor and grantee, and the evidence is clear and convincing that it is a mistake, courts of equity will correct the mistake in the deed.

2. **Land and Land Titles:** ESTATES TAIL. Immediately after the name of the grantee in a deed the words "and his heirs and assigns forever" were first written and then erased. Subjoined to the description of the land were the words: "Which real estate or land is hereby granted and conveyed to said party of the second part and to the heirs of his body forever." The *habendum* clause had the usual words "to his heirs and assigns forever." *Held* to create an estate tail in the first taker, which, by the terms of the statute, became an estate absolute in his bodily heirs at his death.

3. ————: INTENTION AND SITUATION OF PARTIES. In interpreting deeds the intention of the parties is to be ascertained by considering all the provisions of the deed, as well as the situation of the parties, and then to give effect to such intent if not contrary to law.

4. ————: WORD "HEIR" OMITTED. A deed to Joseph S. Hunter without the words "his heirs and assigns forever," passes the fee simple title to him.

5. ————: WORDS OF LIMITATION: HABENDUM CLAUSE. Words limiting an estate to a fee tail need not necessarily appear in the *habendum* clause, and if the *habendum* is repugnant to the granting clause or premises, it will be rejected.

6. ————: ————: ————: SPECIFIC LIMITATIONS. Words of specific limitation in a deed will prevail over words of general limitation. So that, if the specific limitation is to A. and the heirs of his body, and the general limitation in the *habendum* is to A., his heirs and assigns, the deed will be held to have created an estate tail in the grantee named.

*Appeal from Andrew Circuit Court.*—HON. WILLIAM S. HERNDON, Judge.

REVERSED AND REMANDED *(with directions).*

*H. S. Kelley* and *W. G. Hine* for appellants.

(1)  The deed conveyed an estate tail—a life estate to Joseph S. Hunter with remainder to plaintiffs who are the children and heirs of the body of said Joseph S. Hunter.  The proper words to create an estate tail are "heirs of the body."  6 Am. and Eng. Ency. of Law, 879; 2 Bl. Com. 114.  Under the statute, Revised Statutes 1889, section 8836, said Joseph S. Hunter took an estate for life with remainder to his children, the heirs of his body.  *McCulloch v. Holmes*, 111 Mo. 445; *Wood v. Kice*, 103 Mo. 329; *Phillips v. Laforge*, 89 Mo. 72; *Reed v. Lane*, 113 Mo. 127.  (2) The parties to this deed understood that it conveyed to Joseph S. Hunter a life estate only, and regarded it in that light, and the law is that in construing an instrument the acts and conduct of the parties to it are entitled to great weight.  *Patterson v. Camden*, 25 Mo. 13; *Belch v. Miller*, 32 Mo. App. 387; *Moser v. Lower*, 48 Mo. App. 85; *Ridge v. Transfer Co.*, 56 Mo. App. 133.  (3)  The specific limitation to the heirs of his body will prevail over the general limitation to his heirs and assigns, and the estate granted will be an estate tail.  5 Am. and Eng. Ency. of Law, 457, note 2, and authorities there cited; *Berry v. Billings*, 44 Me. 432; *Sumner v. Williams*, 8 Mass. 162.  (4)  The office of the *habendum* is to explain, qualify or define the interest granted when it has not already been done. *Rives v. Mansfield*, 96 Mo. 394; *Warne v Brown*, 102 Pa. St. 347.  If the granting part of the deed contains proper words of limitation, nothing remains for the *habendum* to accomplish.  *Mayors v. Buckley*, 51 Mo. 227; 3 Wash. on Real Prop. 373; and if it is repugnant to the preceding part of the deed, it will be rejected.

*Booher & Williams* for respondents.

(1) Joseph S. Hunter having purchased and entered into peaceable possession of the land in controversy, became possessed of the fee simple title in equity, even before a deed was made. 9 A. L. Reg. (N. S.) 393, 457; *Wood v. Kice*, 103 Mo. 335. (2) The granting clause and the *habendum* of the deed in controversy vested an estate in fee in the grantee and the recitals repugnant thereto should be rejected. *McDowrell v. Brown*, 21 Mo. 60. (3) "If there be inconsistent provisions, some indicating a power of absolute disposal which can only be had by the holder of the fee, and others creating a remainder which supposes a life estate, then the words of the *habendum* should have a controling significance. *Green v. Sutton*, 50 Mo. 192; *Rines v. Mansfield*, 96 Mo. 399; *Cornwall v. Orton*, 126 Mo. 365. (4) In construing the estate conveyed by a deed, the granting clause takes precedence, and the *habendum* is next in importance; but such is the pre-eminence of the former that even if the *habendum* is repugnant to the grant, the *habendum* will be void. 2 Greenleaf's Cruise, p. 651, secs. 75, 76; 2 Blackstone's Commentaries, 298; *Goodtitle v. Gibbs*, 5 B. & C. 709; *Boddington v. Robinson*, L. R. 10 Ex. 270; 1 Stephen's Commentaries, 450; *Earl of Rutland's* case, 8 Rep. 56; *Baldwin's* case, 2 Rep. 23; 3 Washburn, Real Prop. [6 Ed.], p. 436, sec. 60; *Faivre v. Daley*, 93 Cal. 664; *Karchner v. Hoy*, 151 Pa. St. 383; *Moore v. Waco*, 85 Tex. 206; *Bodine v. Arthur*, 91 Ky. 53; *Smith v. Smith*, 71 Mich. 633; *Havens v. Land Co.*, 47 N. J. Eq. 365; *Henderson v. Mack*, 82 Ky. 79.

ROBINSON, J.—This is a suit in equity instituted in the Andrew Circuit Court by the children and heirs of the body of Joseph S. Hunter, deceased, to correct an alleged mistake in a deed executed by Joseph Hunter, deceased, on January 19, 1858, whereby he conveyed to his son Joseph S. Hunter the northwest quarter of the northeast quarter of section 1, township 59, range 36, in Andrew county, instead of the northwest quarter of the southeast quarter of said section, which the petition alleges is the correct description of the property intended to be conveyed, and to recover possession of the same with the rents and profits. The defendants are purchasers of the last named premises from Joseph S. Hunter, with notice of plaintiff's rights therein. The deed under consideration, so far as it is necessary to set it out for the purposes of this case, is as follows:

"This deed, made and entered into this nineteenth day of June, in the year of our Lord, eighteen hundred and fifty-eight, by and between Joseph Hunter, of the county of Andrew and State of Missouri, of the first part, and Joseph S. Hunter, of the county of Andrew and State of Missouri, of the second part, *witnesseth:* That the said party of the first part, for and in consideration of the sum of one thousand dollars to him in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, has given, granted, bargained and sold, and by these presents does give, grant, bargain, sell, convey and confirm unto him the said party of the second part and his heirs and assigns forever a certain tract, piece or parcel of land, lying and being in the county of Andrew and State of Missouri, to wit: The northwest quarter of the northeast quarter of section No. one (1), in congressional township No. fifty-nine (59) of range No. thirty-six (36) containing forty acres more or less,

which real estate or land is hereby granted and conveyed to the said party of the second part and to the heirs of his body forever with all and singular the appurtenances thereto belonging.

"To have and to hold the said tract, piece or parcel of land with all the privileges and appurtenances thereto belonging or in anywise appertaining unto him, the said party, and to his heirs and assigns forever; and the said parties of the first part, for himself, his heirs, executors and administrators does covenant and agree that he will warrant and forever defend the titles to the said tract, piece or parcel of land and every part thereof unto him the said party of the second part, his heirs and assigns, against the lawful claim or claims of all persons whatsoever claiming or to claim the same or any part thereof."

The answer of William G. Patterson was, *first*, a general denial; *second*, in substance, that the deed sought to be reformed was never accepted by the grantee, Joseph S. Hunter, and that the words of limitation, "to the heirs of his body," were inserted therein without the knowledge or consent of said Joseph S. Hunter, and in fraud of his rights, etc., and further that the heirs of the body of said grantee have no legal or equitable interest in the premises intended to be conveyed thereby. The defendant, Warren Patterson, in his answer denied generally the allegations of the petition. The circuit court, after hearing the evidence, found that there was a mutual mistake in the deed as alleged in the petition; that plaintiffs were heirs of the body of Joseph S. Hunter, who died in January, 1893, and that the defendants were purchasers from the Hunters with notice of such mistake, but denied a reformation of the deed, as prayed, on the ground that the deed vested an estate in fee simple in Joseph S. Hunter, and consequently the plaintiffs had no stand-

ing in court and therefore dismissed the petition and gave judgment in favor of the defendants for costs, from which judgment this appeal is prosecuted. Without reciting the testimony in detail, suffice it to say that the evidence clearly and unequivocally shows that at the time of the execution of the deed in question Joseph Hunter was the owner of a tract of land in Andrew county consisting of two hundred and forty acres, being in a body; and that he intended to convey the south forty acres of it to his son Joseph S. Hunter, but that by a mistake in drafting the deed the northwest quarter of the northeast quarter of section 1 was inserted instead of the northwest quarter of the southeast quarter of said section, which was intended to be conveyed by said deed.

Thereupon Joseph S. Hunter took possession of said south forty, the premises in controversy, built a house thereon and continued in possession thereof and to reside thereon with his wife and family for five years, making valuable and lasting improvements thereon. The mistake in the description of the land was not discovered until 1867, nearly nine years after the date of the deed. In the meantime, however, Joseph Hunter had conveyed certain land to defendant William Patterson, including the forty acre tract so conveyed to Joseph S. Hunter by mistake. Afterward in March, 1867, Joseph S. Hunter brought suit against Joseph Hunter and the defendant William Patterson in the circuit court of Andrew county, praying for a decree vesting in him all the title and interest of said Joseph Hunter and William Patterson to the land in question. The defendants in said suit, then by their answer, which was read in evidence in this case, after specifically denying the allegations of the petition, averred in substance that on June 19, 1858, Joseph Hunter voluntarily gave and attempted to convey to

Joseph S. Hunter a life estate in the south forty acre tract of the Joseph Hunter farm, but by mutual mistake the deed conveyed the northwest quarter of the northeast quarter of section one instead of the northwest quarter of the southeast quarter, which the answer averred was the correct description of the property intended to be conveyed, coupled with the averment that on January 7, 1867, said Joseph Hunter, in order to protect said Patterson against loss on account of the mistake in his deed, conveyed to him the land now in controversy; thus showing that defendant William Patterson was well aware of and had due notice of such mistake, and that a life estate only was intended to be conveyed thereby. In March, 1868, Joseph S. Hunter and wife executed a quitclaim deed to the defendant William Patterson for the premises in controversy and thereupon the case against Patterson and Joseph Hunter was dismissed.

On April 10, 1889, the defendant William Patterson conveyed this land to his son, the defendant Warren Patterson, who entered into possession of the premises and continued in the possession thereof up to the beginning of this suit. The defendant, William Patterson, testifies that he did not sell this land to his son, but deeded it to him as an advancement merely. In November, 1858, Joseph S. Hunter married Dicey Turpin, and of that marriage the plaintiffs, who are the heirs of his body and children of said marriage, were born, and now survive him.

It is not deemed necessary to indulge in an extended discussion of the principles governing courts of equity in decreeing a correction of a mistake in a conveyance which does not fulfill the intention of the parties thereto by reforming it accordingly. These principles have been so often recognized and defined by elementary writers and repeated adjudica-

tions that very little, if anything, is left for discussion or conjecture. The underlying principle by which courts of equity are governed in this class of actions is, that where the mistake is mutual and the evidence thereof, as in this case, clear and convincing, equity will rectify the same. It is perfectly manifest from the record that it was the intention of both parties to the deed, when it was executed, that the south forty acres was to be conveyed to Joseph S. Hunter. Indeed it is conceded by defendants, and the trial court found that there was a mutual mistake in the description of the property conveyed. Under the principles stated the trial court was justified in finding such mistake.

But it is insisted by defendants that the circuit court correctly construed the deed as vesting the title in fee simple in Joseph S. Hunter, and consequently no cause of action existed and the plaintiffs' petition was properly dismissed. Plaintiffs on the other hand contend that by the clause in the deed immediately following the description of the land, just preceding the *haben-dum* "which real estate or land is hereby granted and conveyed to said party of the second part and to the heirs of his body forever" the title to said land was vested in Joseph S. Hunter in fee tail, which estate was by section 8836, Revised Statutes 1889, converted into an estate for life in said Joseph S. Hunter, with remainder in fee to "the heirs of his body," the plaintiffs herein. The contention of defendants, and the judgment of dismissal by the trial court, was undoubtedly correct if the estate thereby conveyed was in fee simple. If, however, the estate conveyed by the deed was only an estate in fee tail, the plaintiffs are clearly entitled to have the deed reformed as prayed. So that the decisive question in this case is the proper construction of the deed made in 1858 to Joseph S. Hunter. Did the deed in question vest in Joseph S.

Hunter, the grantee therein named, an estate in fee simple, or an estate for his life only, with remainder in fee to the heirs of his body? To us it seems the question should be answered in favor of the latter position.

It will be observed from the reading of the deed that the words, "and his heirs and assigns forever," following the granting clause are erased by drawing a line over them thus: "~~and his heirs and assigns forever.~~" Following and immediately after the erased words is a description of the land, subjoined by these words: "Which real estate or land is hereby granted and conveyed to said party of the second part and to the heirs of his body forever with all and singular the appurtenances thereto belonging." Clearly these words were in the deed for the purpose of limiting the estate thereby conveyed to the life of the grantee therein named, with remainder to the heirs of his body. They can have no other purpose. The erasure of the words "and his heirs and assigns forever," in the granting clause, strengthens this view. If these superadded words, "which real estate or land is hereby granted and conveyed to said party of the second part and to the heirs of his body forever, etc.," were not inserted in the deed for the purpose of limiting the estate, then they are absolutely without meaning. While the erasure of the words "and his heirs and assigns forever" in the first instance would not, perhaps of itself, create an estate tail, yet when taken in connection with the above quoted clause of the deed, following the description of the premises conveyed, and preceding the usual *habendum*, it shows unmistakably that the clause in question was inserted therein for the sole and particular purpose of limiting the estate granted.

The governing rule of interpretation is, "that the intention of the parties is to be ascertained by considering all the provisions of the deed, as well as the sit-

uation of the parties, and then to give effect to such intent if practicable, when not contrary to law." 2 Devlin on Deeds [2 Ed.], sec. 836.

When we come to take into consideration the situation of the parties to this deed and their acts and conduct with respect thereto, it is made quite clear that the grantor did not intend to convey the estate absolutely in fee simple. The record shows that both parties to the deed understood that Joseph S. Hunter only acquired a life estate in the land therein named. Joseph S. Hunter, in his petition filed against Joseph Hunter and William Patterson in 1867 to correct and enforce the deed made to him by his father, alleged that he only got a life estate in the land conveyed to him, but was entitled under his agreement to a deed conveying the fee simple title, while Joseph Hunter and the defendant William Patterson set up by answer that the said Joseph S. Hunter got a life estate and that was all that was intended or attempted to be conveyed to him. Mrs. Hunter also testified that at the time the deed was made to her husband by his father, her husband said to her the deed was not what he wanted, but that he would take it as it was. The testimony of G. Steby was to the effect "that young Joe said that his father had undertaken to convey simply a life estate by putting in the deed the words 'heirs of his body.' Moreover, when the defendant William Patterson took a quitclaim deed to the land from Joseph S. Hunter and wife in 1868, it was understood that Joseph S. Hunter had only a life estate therein, and consequently could not convey the fee simple title, having been so advised by Governor Hall, who was consulted by him as to the proper construction to be given the deed from Joseph to Joseph S. Hunter.

Standing alone, the granting clause proper in the

deed as it was with the erasure, would pass the fee simple title to Joseph S. Hunter, but the grant being limited by the clause "to said party of the second part and to the heirs of his body forever" had the effect to convey to Joseph S. an estate in fee tail only, which, under the above cited statute, became an estate for life in Joseph S. Hunter, with the remainder in fee in his children; and such has been the general construction put upon similar instruments by this court in *McCullock v. Holmes*, 111 Mo. 445; *Wood v. Kice*, 103 Mo. 329; *Reed v. Lane*, 122 Mo. 311; *Phillips v. Laforge*, 89 Mo. 72; *Charles v. Patch*, 87 Mo. 463; *Farrar v. Christy*, 24 Mo. 453; *Bone v. Tyrrell*, 113 Mo. 175.   6 Am. and Eng. Ency. Law, 879.

While the words of limitation usually appear in the *habendum* of the deed, it is not necessary that they should, provided they appear in some other part.   *McCullock v. Holmes, supra;* 3 Wash. Real Prop. 366, 367, 436; *Kenworthy v. Tullis*, 3 Ind. 96. In the deed under consideration the words defining and limiting the estate conveyed are found in the premises in connection with and qualifying the granting clause and preceding the formal *habendum*.   The *habendum*, like any other part of the deed, may be examined in construing the instrument so as to effectuate the intention of the parties, yet it is not an absolutely essential part of the deed, and in modern conveyancing is being abandoned and quite generally becoming obsolete.   If the grant or premises in the deed contain words of limitation, nothing remains for the *habendum* to accomplish, and it may be dispensed with.   So unimportant is the *habendum* that if repugnant to the limitation appearing in the premises it will be ineffectual to control the premises, and it may be rejected entirely when repugnant to or inconsistent with other clauses of the deed. *Major v. Bukley*, 51 Mo. 227; 3 Wash. Real Prop. 337.

In *Charles v. Batch, supra,* the words of limitation
were: "To the said Elizabeth Charles and to the heirs
of her body and their assigns forever." RAY, J., who
wrote the opinion, held that she took an estate for life
only.    In 5 Am. and Eng. Ency. Law, 457, the rule is
thus stated:    "If the limitation in one part is to A.
and his heirs generally, and in the other part the es-
tate is limited to A. and the heirs of his body [as in
this case] the two descriptions of the estate are not
necessarily contradictory, and the specific limitation
will prevail over the general limitation.    In such cases
the estate granted will be an estate tail."    (Citing
numerous authorities approving that rule of construc-
tion.)    Here the grant in the premises is to Joseph S.
Hunter, with specific limitations "to the heirs of his
body," while in the *habendum* it is to him and his heirs
generally.    Under the authorities above cited the lat-
ter clause of the *habendum* must give way to the former
clause of the premises, and the deed construed as creat-
ing a life estate in Joseph S. Hunter, with remainder
to his children, the plaintiff herein.    By this construc-
tion meaning and effect is given to all parts of the deed
in consonance with the canons of construction before
mentioned, so that the deed takes effect in the manner
contemplated by the parties thereto.    The authorities
cited by counsel for defendants are not in conflict with
the views here expressed.    For the reasons given the
circuit court erred in dismissing plaintiffs' petition.
Plaintiffs were entitled to have the deed reformed and
the description of the property conveyed corrected so
as to read "the northwest quarter of the southeast
quarter of section one, township 59, of range 36 in An-
drew county, Missouri" instead of "the northwest
quarter of the northeast quarter" as at present; and
that this may be done and plaintiffs recover possession
of same with rents and profits, the judgment of the

circuit court is reversed and the cause remanded with instructions to enter a decree in favor of plaintiffs, reforming the deed accordingly, and that an ascertainment of the rents and profits of the premises be made.

All concur.