MINNIE B. KIMBLE, RESPONDENT, v. THE MAYOR AND
COMMON COUNCIL OF THE CITY OF NEWARK,
APPELLANT.

Submitted July 9, 1917—Decided November 19, 1917.

1. In an action of ejectment the plaintiff was the only heir-at-law
of her mother, and her right of action rested upon a deed in which
her father and mother were grantees as parties of the second
part. The grant and *habendum* was to the party of the second
part, *her* heirs and assigns. After the death of the mother the
father conveyed the land, and after his death the daughter brought
her action. *Held*, that the husband took an estate by the entirety
with his wife for his life with right of survivorship, and that to
the estate of the wife there was added a limitation over to her
heirs; that the husband's deed conveyed a life estate only, and
that the plaintiff after her father's death took a fee-simple.
2. When there is no obvious mistake of a verbal or clerical char-
acter requiring a correction in order to make all the parts of an
instrument harmonious, a court of law will read it as written,
and not undertake to reform it by exercising functions of a court
of equity where the power of reformation is lodged.
3. In an action for waste against a life tenant for the total destruc-
tion of all the buildings on lands in the possession of the tenant,
testimony of the cost of reproduction was admitted, not as a
measure of damage but as a means, in connection with the proof
of their physical condition and opinion testimony of their value
when destroyed, to aid the jury in ascertaining the damage suf-
fered by the remainderman—*Held*, that such testimony was not
incompetent. It was some proof from which value may be in-
ferred in connection with the other proof as to age, condition of
repair, and extent of deterioration.

On appeal from the Supreme Court.

For the appellants, *Harry Kalisch* and *Joseph G. Wolberg.*

For the respondents, *F. Hamilton Reeve* and *J. Frank Mc-
Davitt.*

The opinion of the court was delivered by

BERGEN, J. This record embraces two causes of action, one
in ejectment for the possession of a tract of land, and the

other to recover damages for waste resulting from the destruction and removal of all buildings from the land by the defendant while in its possession. The trial court directed the jury to find that the plaintiff was entitled to recover possession of the land but submitted to them the determination of the amount of damage which the plaintiff had suffered because of the waste. The jury found for the plaintiff on both issues and assessed her damages for the waste, upon which judgment was entered from which the defendant has appealed.

The alleged errors upon which the defendant rests its appeal are, that the court refused to nonsuit the plaintiff or to direct a verdict for the defendant; that the trial court erroneously excluded and admitted testimony over the objection of the defendant, and that the court did not properly instruct the jury as to the legal principles applicable to the cause.

But two questions require solution, one being was the trial court correct in directing a finding for plaintiff on the question of the right of the plaintiff to the possession of the land in dispute, which is to be determined by the title deeds, and the other is, does the record disclose any error in the proceedings had at the trial which require the reversal of the judgment for damages for waste.

The facts are not in dispute and show that the land in question was conveyed to Jacob Ralph, and Elizabeth Ralph his wife, by a deed bearing date February 7th, 1897, made by Janett Sehulster and her husband; that Elizabeth Ralph died October 6th, 1898; that Jacob Ralph conveyed his estate in the land to Wesley Chamberlain May 10th, 1902; that Chamberlain conveyed his estate in the land to the defendant April 22d, 1911; that in the latter year the defendant demolished the house and all the buildings standing on the land and removed and appropriated to its own use all the material of which they were constructed, and that Jacob Ralph died March 15th, 1915. In support of her possessory action the plaintiff claims that the deed to her father and mother, made by Janet Sehulster and her husband in 1897, conveyed an

estate by the entirety to her father and mother with right of survivorship for the life of her father, with a limitation of the fee thereafter to the heirs of Elizabeth Ralph, her mother, and that upon the death of her father in 1915, her mother having predeceased him, plaintiff's title became absolute; that the conveyance by Jacob Ralph to Wesley Chamberlain conveyed only his life estate, and that Chamberlain could convey no greater title to the defendant.

The trial court adopted this view and not only refused the defendant's motions to nonsuit the plaintiff and to direct a verdict for the defendant, but on the contrary directed the jury to find for the plaintiff on this issue.

The legal accuracy of this action of the trial court depends upon the construction to be given to the deed made by the Schulsters to Jacob and Elizabeth Ralph. In it the names of the grantees are Jacob Ralph and Elizabeth Ralph, his wife, "of the second part," and the grant is "Unto the said party of the second part and to her heirs and assigns forever," and the *habendum* is "Unto the said party of the second part, *her* heirs and assigns, to the only proper use, benefit and behoof of the said party of the second part, *her* heirs and assigns forever."

The covenant of *seizin* was with the said party of the second part "her heirs and assigns," and that of warranty "Unto the said Jacob Ralph and Elizabeth Ralph heirs and assigns forever." Neither of these covenants can enlarge or qualify the grant, and if the estate granted was not a fee-simple in Jacob Ralph, the covenants will not enlarge his estate.

Mr. Justice Whelpley, speaking for this court in *Adams* v. *Ross,* 30 *N. J. L.* 505, said: "The inconsistency between the conveyance and covenant shows a mistake in one or the other. The safest rule of construction is that propounded by the Supreme Court; that the quantity of the estate conveyed must depend upon the operative words of conveyance and not upon the covenants defending the quantity of the estate conveyed, * * * to adopt, as a settled rule of interpretation, that deeds are to be construed like wills according to the presumed intent of the parties making them, to be deduced from

an examination of the whole instrument would be dangerous, and, in my judgment, in the last degree inexpedient."

Reading the words of conveyance contained in this deed it is quite plain that the limitation is to the heirs of the wife, and that the husband took a life estate only.

The appellant argues that because there are two grantees designated as the party of the second part, and the grant is to the party of the second part *her* heirs and assigns, the party of the second part being plural and the pronoun singular, that it is apparent "that the parties have not said precisely what they meant." To adopt this argument would require a court of law to reform the deed so as to express what the parties intended, but this can only be done in a court of equity, and most, if not all, the authorities upon which the appellant relies to sustain its proposition are cases in equity, and a court of law cannot say that the limitation in this case, to the heirs of the wife, is an obvious mistake of a verbal or clerical character requiring a correction in order to make all parts of the instrument harmonious, for there is no reason why a grantor may not in the same deed convey a life estate to one grantee with a limitation over to the heirs of another. There is, in this case, no obvious verbal or clerical mistake either of intent, or grammatical misuse of words.

The effect of a deed to a husband and wife with a limitation over to the heirs of the husband was considered in *Den* v. *Hardenburgh,* 10 *N. J. L.* 42. In that case the husband died during the life of his wife and she brought ejectment against the heir of her husband who had taken possession of the land, and her claim was based upon a deed originally drawn to the husband and *his* heirs, but before execution the name of the wife was interlined without alteration of the words of limitation to "his" heirs.

Chief Justice Kinsey and Mr. Justice Drake each read an opinion sustaining the right of the wife to possession. The Chief Justice saying it was not necessary to determine whether under the deed the wife took a fee-simple, as she claimed, or a life estate, because she was entitled to the possession during the continuance of her estate by right of survivorship

as tenant by entirety, "Although to ascertain the duration of the estate of the lessor is not essential." In his concurring opinion Mr. Justice Drake said: "The grantees are 'party of the second part, his heirs and assigns,' the term party embraces both grantees, and is used for that purpose with strict grammatical accuracy; and the word 'his' is definite in its reference to only one of them. More formally expressed, the grant would read, 'to James Hardenburgh and Eliza, his wife, and to the heirs and assigns of the said James Hardenburgh,'" citing *Coke Litt.*, § 285, and concluded that plaintiff having survived her husband "Would be entitled to a life estate in the whole premises." The opinion of Mr. Justice Drake is not adverse to that of the Chief Justice. it has the support of ancient authority, is logical and reasonable, and has stood as an exposition of the law of this state for nearly ninety years without question, so far as we can discover, and has been the guide of the bar in passing upon the titles to real estate and ought not to be disregarded at this late day to the possible disturbance of titles to land unless plainly erroneous. A similar result was reached in *Breed v. Osborne*, 113 *Mass.* 318.

We are of opinion that Jacob Ralph, the husband, took, under the deed to him and his wife, an estate by the entirety with his wife for his life with right of survivorship, and that to the estate of the wife there was added a limitation over to her heirs, so that the plaintiff as her heir took in fee-simple the entire estate with right of possession after the death of her father.

The appellant next argues that it was error to admit in evidence the book of deeds containing the record of the conveyance to Jacob Ralph and his wife, because the best evidence is the original deed. There is nothing in this point because the statute makes the record competent (2 *Comp. Stat.*, p. 1554, § 55), and if the defendant desired the original deed it should have taken some steps, by notice or otherwise, to require the plaintiff to produce it if it was in her possession, but the record shows that it was not in the pos-

session of the plaintiff and that she gave notice to the defendant to produce it.

The defendant further urges that it was error to overrule the evidence, taken by deposition, of William Roome. The purpose of the deposition was to show that the witness drew the deed to Ralph and his wife, witnessed the signatures and took the acknowledgment of the grantors; that when he drew the deed one person was named as the party of the second part and that person was a female, and when he was shown a certified copy of the deed to Jacob and Elizabeth Ralph he testified that he never took any acknowledgment of a deed from Schulster to Ralph, that he took it to another party; "that is, I have no recollection of doing it at all, it is twenty years ago." This was an offer to prove alterations made in a deed after its execution without the production of the deed. We think this testimony was clearly incompetent in this action, however useful it might be on a bill in equity to reform the deed, on which point no opinion is expressed.

The second cause of action is based upon the ground that the defendant, after it acquired the life estate of Jacob Ralph through the deed of his grantee, Chamberlain, committed waste by removing all the buildings standing on the land and appropriated them to its use.

As above set out the defendant acquired title from Chamberlain in 1911 and very shortly after that the waste was committed, during the lifetime of Jacob Ralph.

The appellant urges that it was error to overrule the following question put to Wesley Chamberlain, viz., "What was the general condition of the so-called hotel?" While this question contains no date, a reference to the preceding question shows that it had relation to the time when Chamberlain obtained possession in 1902, and counsel stated that the purpose of the question was to show what improvements Chamberlain had put on the property. After the question was fully answered the plaintiff objected, and in support of it the defendant argued that it was competent to show the character of the improvements made by Chamberlain, and

that if he made them in good faith such improvements were not the "Subject of damages in waste."

The court, after the answer and arguments, stated that the question would be overruled "For the purpose for which it is offered by defendant's counsel." There are at least two reasons why the action of the trial court was not a harmful error, first the question was fully answered and the answer was never stricken out, nor did the defendant ask to have it done, but it remained in the record subject to consideration by the jury, and second if a life tenant makes a permanent addition to the land by way of repairs the cost is not chargeable to the inheritance. *Pratt* v. *Douglas,* 38 *N. J. Eq.* 516. It becomes a part of the land and its destruction will support an action for waste. Improvements may be allowed on a claim for mesne profits by statute, but this is a claim for waste by destruction of buildings, and at law plaintiff was entitled to the lands and buildings in the condition they would have been when her father died if no waste had been committed, and not as they were when he conveyed to Chamberlain. The latter, who took with notice of defect in title, could blame no one but himself if he added value to land in which he had only a life estate. What has just been said applies to an exception taken to the overruling of another question put to the same witness. "Did you do anything about the property as to its improvement after you took possession?" The question was answered before objection, and there was no motion to strike out the answer, and it was admitted by defendant that its purpose was the same as that for which the prior question was propounded. As in neither case was the answer to the question stricken out, the ruling of the court was without injurious effect.

The appellant also urges that it was error to sustain, over objection by the defendant, the following question put to a witness by the plaintiff: "Do you know about what it would cost to reproduce that hotel?" In admitting this question the court said: "It is not the measure of damages, but it may be some evidence of the value to have them replaced, which, of course, would give you a new building in place of

the old." The question was not answered and another was put substantially like the first to which no exception was taken. The witness then testified that the cost of reproduction at the time stated would be $6,000, but that when the buildings were taken down they were in poor condition and were at that time worth about $2,000. We fail to see how the defendant was injured by the question complained of when the entire testimony of the witness is considered. The cost of reproduction would be some evidence of value if no deterioration had taken place, and the witness, after describing the condition of the buildings when destroyed, estimated their then value at one-third of what they would have been if new. If these buildings had just been erected when the plaintiff committed the waste, certainly their cost would have been some evidence of the damage which the owner suffered by their unlawful destruction, for it would give the jury some idea of value, making due allowance for depreciation during the period between erection and destruction. Here the jury were given an estimate of the value of such buildings if new, their dilapidated condition was fully described by the witness, and they had his estimate of what they were worth when destroyed. It was after all only an estimate by a witness qualified to speak, and the defendant made no proof of their value, nor kept any account of the value of the material.

If, as we think, the cost of reproduction of a new building, destroyed shortly after its erection, is some evidence of value, although not the true measure, then the question was not incompetent because the period between erection and destruction does not affect the principle. The court in charging the jury, referring to this testimony said that it "Was only introduced for the purpose of helping you and guiding you and not for the purpose of having you find that the cost of reproducing the building is the value that should be allowed, for you can see, gentlemen, there was a building upon the property which was old, that had been there a number of years and they could not ask to have it replaced by a new building because the new would be worth a great deal more

than an old one, for the old building had only a certain length of life remaining to it, and the new building had an additional length of life to which the plaintiff would not be entitled. The only purpose of introducing that evidence, gentlemen, was to enable you to know how much it would cost to reproduce the building, and then you can make allowance for the age and determine what the reasonable value was at the time it was destroyed, and that is the only way in which you may consider that evidence."

As thus limited and explained we do not think the answer to the question was harmful error.

The next point is that the trial court refused to charge "That where competent evidence is adduced showing the actual value of the buildings at the time of their destruction, evidence of replacement value must not be considered by the jury."

We do not think this was error because there was no evidence of the actual value of the buildings at the time of their destruction, there was testimony by an expert of their estimated value only. It would be very difficult to show the actual value of buildings that had been destroyed and the materials all removed, and as we have said, evidence of the cost of reproduction was competent under the circumstances shown in this case.

When Chamberlain conveyed to the defendant the deed embraced two tracts of land, one the premises in dispute, and the other eighty-two hundredths of an acre, and the plaintiff was allowed to ask a witness the value of the eighty-two hundredths of an acre of land, over the objection of the defendant. The purpose of this question was to ascertain the value of the land which the plaintiff claims, the entire tract having been sold for $12,500. This would not have been incompetent if the plaintiff had followed it up by showing the market value of the entire tract, but the evidence offered was only partial proof of value, and if at the close it remained incomplete, it should perhaps have been stricken out but no such motion was made.

The next point argued is that the verdict was excessive. If this be so then the defendant should have applied to the · trial court for a rule to show cause, but that question we cannot consider on this appeal. This disposes of all meritorious questions argued, and finding no error in the record the judgment will be affirmed, with costs.

· SWAYZE, J. (dissenting). My vote for reversal is solely upon the ground that it was erroneous to admit evidence as to the cost of the building when it was new, many years before.

*For affirmance*—THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, HEPPENHEIMER, WILLIAMS, JJ.  9.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, KALISCH, WHITE, JJ.  4.