CLINTON COUNTY TRUST COMPANY, a Corporation, Appellant, v. CHARLES F. METZGER'S EXECUTORS, et al., Respondent.*

Kansas City Court of Appeals. May 4, 1925.

1. **FRAUDULENT CONVEYANCES: Deeds: Withholding Deed to, or Mortgage upon, Land from Record Will Not Ipso Facto Vitiate Instrument.** The mere withholding a deed to, or mortgage upon, land from record will not *ipso facto* vitiate the instrument.

Clinton Co. Trust Co. v. Metzger.

2. ———: ———: Failure to Record Deed or Mortgage, Held Fraudulent as to Creditor When Withholding the Instrument Gives Grantor or Mortgagor a Fictitious Credit, upon Faith by Creditor of Ownership by Debtor of Property Conveyed, or Mortgaged, and Creditor Relies upon That Credit to Its Damage. Failure to record deed to, or mortgage upon, land is fraudulent as to subsequent creditor of grantor, or of mortgagor, only when the withholding the instrument gives the grantor or mortgagor, upon the faith of the ownership by debtor of the property conveyed, or mortgaged, a fictitious credit, and creditor relies upon that credit to its damage.

3. ———: Notice: Creditor Held to Have Constructive Notice of Recorded Deed. Where deed was on record creditor *held* to have constructive notice of it.

4. ESTATE BY ENTIRETY: Husband and Wife: Estate by Entirety Not Subject to Sale under Execution for Debts of One of the Parties. An estate by the entirety is not subject to sale under execution for the debts of one of the parties.

5. DEEDS: Granting Clause Controls Over Habendum and Warranty Clauses Where There is Necessary Repugnance Between Them. The granting clause must control over the *habendum* and warranty clauses where there is necessary repugnance between them.

6. ———: Qualifying Words in Habendum Clause Will Lessen, Enlarge, Explain or Qualify Estate Granted, Unless There is a Necessary Repugnance Between Grant and Habendum. Qualifying words in *habendum* clause will be held to lessen, enlarge, explain or qualify the estate granted, unless there is a necessary repugnance between the grant and the *habendum*.

7. ———: Where Grant to Certain Persons, Habendum Clause Not Allowed to Change Grantees, Unless Such Intention is Gathered From Instrument as a Whole. Where the grant is to certain persons the *habendum* clause will not be allowed to change the grantees, unless such intention is to be gathered from the instrument as a whole.

8. ESTATE BY ENTIRETY: Husband and Wife: Grant to Husband and Wife as Parties of Second Part Held to Create Estate by Entirety, Though Habendum and Warranty Clauses Contained Qualifying Words. Grant to husband and wife, as parties of the second part, *held* to create in them an estate by the entirety, though qualifying words in *habendum* and warranty clauses are "unto the said party of the second part, his heirs and assigns."

9. **FRAUDULENT CONVEYANCES: "Credit" as Used in Cases Where Cause of Action Relied upon is the Creating of Fictitious Credit, Defined.** "Credit" in the sense used in cases where the cause of action relied upon is the creating of a fictitious credit, means the apparent possession of property on the part of the debtor out of which the creditor can enforce payment of such debt by law, and not such security or payment the creditor may hope to gain by debtor's inducing some one else to help him pay or secure it.

10. **HUSBAND AND WIFE: Acts of Husband and Wife, Tenants by Entirety of Farm, Held Not to Make Husband, Wife's Agent to Create a Lien Thereon in Favor of Bank, Superior to Lien of Deed of Trust Given by Them to Another.** The fact that husband and wife, tenants by entirety, moved to and lived upon farm, and that husband ran or operated it and used a portion of money he borrowed from bank in improvements on the farm, *held* not to make him wife's agent to create a lien thereon in favor of bank which would be superior to the lien contained in deed of trust which he and his wife had given to another.

11. **FRAUDULENT CONVEYANCES: Where Deed to Husband and Wife, as Tenants by Entirety, Was Recorded, Held Notice to Bank That Land Was Not Subject to Execution for Husband's Debts.** Where deed to husband and wife, as tenants by the entirety, was recorded, *held* notice to bank that land was not subject to execution for husband's debts.

12. **GIFTS: Debtor's Payment of Interest Each Year on Debt Negatives Idea of Gift of Debt by Creditor.** Regular payment by debtor of interest each year on debt negatives idea of gift of debt by creditor.

13. **MORTGAGES: Liens: Indefinite Idea of Holder of First Lien to Give Debt to Debtor and Which He Never Carried Out, Held Could Add Nothing to Rights of Holder of Second Lien.** Even if creditor entertained an indefinite idea in his mind that possibly in future he might give debt secured by deed of trust to debtor, such could not affect his rights since such idea never crystallized into actual fact, and hence could add nothing to rights of holder of second lien.

---

*Corpus Juris-Cyc. References; Deeds, 18 C. J., p. 273, n. 9; p. 288, n. 27, 28. Fraudulent Conveyances, 27 C. J., p. 491, n. 3, 8; p. 593, n. 12, 13. Gifts, 28 C. J., p. 680, n. 82. Husband and Wife, 30 C. J., p. 559, n. 73; p. 572, n. 87. Mortgages, 27 Cyc., p. 1218, n. 23.

Appeal from the Circuit Court of Clinton County.—*Hon. Guy B. Park,* Judge.

AFFIRMED.

*D. H. Frost* and *E. C. Hall* for appellant.

*W. S. Hermdon* for respondent, Metzger.

*R. J. Musser* for Mallen & Culver, Trustee.

TRIMBLE, P. J.—The Clinton County Trust Company, holding a deed of trust (third in point of time), for $5500 on land in that county owned by Ernest Mallen and Hattie A. Mallen, husband and wife, brought this action to have its trust deed declared a lien prior to a second deed of trust on said land for a like amount held by Charles F. Metzger. Since the appeal herein, Metzger has died and suit has been revived herein as to him in the name of his executors.

The suit is brought on the ground that Metzger, by failing to record his deed of trust until after Ernest Mallen had become indebted to plaintiff in said amount, had enabled said Mallen to have a false and fictitious credit which misled plaintiff to its injury, said Mallen being insolvent, by reason of all which Metzger's deed of trust was fraudulent as to plaintiff, Mallen's creditor.

It seems that on March 1, 1918, the land in question (124 acres) was conveyed to the Mallens by Samuel Hackett and wife. The grantees were described in the deed as they in fact were, "Ernest Mallen and Hattie Mallen—his wife—husband and wife." In payment of the purchase price, $1250 in cash owned by Ernest Mallen was paid, together with $10,000 borrowed on their note secured by the first deed of trust and $5500 borrowed from Metzger on their note secured by the second deed of trust on said land. All of said money was paid to Hackett in consideration of his deed to the Mallens.

The deed to Mallen and the first deed of trust were immediately recorded. At that time Metzger lived several miles in the country and his note and deed of trust were delivered to him at his home. He was an uncle of Ernest Mallen. He did not put his deed of trust on record until November 2, 1921. He says it was on account of sickness and neglect. His wife was sick and continued so for a year and he thought of nothing but her.

In April, 1919, Ernest Mallen, at the solicitation of plaintiff's officers and stockholders, removed his account from the Bank of Gower, at Gower, Missouri, to the plaintiff trust company. He started his account there with the proceeds of a loan of $1700 which plaintiff at that time loaned to him. For about two-and-one-half years thereafter he ran the farm, buying, feeding and selling stock, the transactions of which business totalled, in the way of deposits, about $9000 per annum. During this time he borrowed from plaintiff various other sums and made payments thereon until on November 1, 1921, the situation was he owed the bank notes aggregating $5500.

Ernest Mallen paid the first year's interest on the Metzger note promptly in March, 1919, by check on the Gower Bank and, in March, 1920, he paid the second year's interest thereon, this time by check on the plaintiff bank, his account in the meantime having been transferred there. The third year's interest, however, he did not pay until some time in October, 1921, likewise by check on the plaintiff bank. Noticing this check, the cashier, a few days before November 1, 1921, asked Mellon for security on the amount he owed the bank, and on insisting upon having a deed of trust on the land, Mallen told him of the Metzger deed of trust and agreed to give the bank a deed of trust but said it would have to be a third deed of trust.

Thereupon, on November 4, 1921, Mallen and his wife gave the bank their joint note and deed of trust for

219 Mo. App—24.

$5500 on said land which deed was recorded on November 10, 1921. Metzger had, however, on November 2, 1921, filed his deed of trust for record.

After taking this note for $5500 and the third deed of trust as above stated, plaintiff took no further steps until a year later, when, in November, 1922, upon Metzger's commencing foreclosure proceedings under his deed of trust and being about to sell, this suit was brought and in it was included a prayer to restrain said sale. The restraining order was issued, but was dissolved when plaintiff's bill was dismissed. Whereupon plaintiff appealed.

The record discloses no express evidence of any agreement or understanding between Metzger and Mallen that the former should withhold his deed from record, nor is there any express evidence that Metzger purposely refrained from recording it in order to give Mallen a fictitious credit, but it is plaintiff's contention that since Metzger knew Mallen was running the farm, buying, selling and feeding stock, and knew or had heard he was borrowing money from plaintiff, the legal effect of withholding his deed was to give Mallen a fictitious credit and Metzger must be held to have intended doing so since that was the natural result of what he did, and a man is presumed to intend the natural and ordinary consequences of his acts.

"The mere withholding a deed to, or mortgage upon, land from record will not *ipso facto* vitiate the instrument. It is only when the withholding the instrument gives the grantor *upon the faith of the ownership* by him of the property conveyed a fictitious credit and some one has thereby been misled to his injury that such failure to record will be held to be fraudulent." [Clark v. Lewis, 215 Mo. 173, 188.] (Italics ours.)

Consequently, before plaintiff could obtain the relief prayed for, it must prove that the failure to file the Metzger deed gave Mallen a fictitious credit, and that the

bank *relied* upon that credit to its damage. [Wall v. Beedy, 161 Mo. 625.] The deed to the Mallens was on record and plaintiff had constructive notice of it. If, therefore, the title created by the deed from Hackett to Ernest Mallen and Hattie A. Mallen, husband and wife, was not such a title as would render the land subject to execution for the payment of Ernest Mallen's debts, we fail to see how the withholding of Metzger's deed of trust gave Ernest Mallen a fictitious credit. An estate by the entirety is not subject to sale under execution for the debts of one of the parties. [Stiffel's, etc., Brewing Co. v. Saxy, 273 Mo. 159.] The question then arises did the deed to the Mallens create an estate by the entirety? The deed reads and is between "Samuel S. Hackett and Carrie Hackett, husband and wife, . . . parties of the first part and Ernest Mallen and Hattie Mallen—his wife—husband and wife . . . parties of the second part, Witnesseth that the said parties of the first part, in consideration of the sum of sixteen thousand, seven hundred and fifty dollars to them paid by the said parties of the second part, the receipt of which is hereby acknowledged, do, by these presents, grant, bargain, and sell, convey and confirm unto the said parties of the second part, their heirs and assigns, the following," etc. The basis on which plaintiff contends that the deed does not create an estate by the entirety is that the *habendum* and warranty clauses are "unto the said party of the second part, his heirs and assigns." But there is no doubt as to who the parties of the second part are and to whom the estate is granted, namely, to the said second parties. The husband and wife were the parties of the second part and the grant was to them, and this, under the law, created in them an estate by the entirety. The granting clause must control over the *habendum* and warranty clauses where there is a necessary repugnance between them. [Devlin on Deeds (3 Ed.), sec. 214, p. 309.] In Missouri, the rule is that *qualifying* words in

the *habendum* clause will be held to lessen, enlarge, explain or qualify the *estate* granted, *unless* there is a necessary repugnance between the grant and the *habendum*. [Utter v. Sidman, 170 Mo. 284.]    But where the grant is to certain persons the *habendum* clause will not be allowed to change the grantees, unless such intention is to be gathered from the instrument as a whole.   We think it is clear from this deed that the *grant* is to the husband and wife, and this being true, the *law* fixed where the title shall go upon the death of one or both of the parties; the *habendum* clause cannot be allowed to eliminate one or more of the grantees by attempting to qualify the *estate* created.   We think the deed created an estate by the entirety, and this being so, Ernest Mallen had no title therein which was subject to execution for his debts, hence no fictitious credit could have been extended to him.

It seems to us that credit in the sense used in cases like these where the cause of action relied upon is the creating of fictitious credit, means the apparent possession of property on the part of the debtor out of which the creditor can *enforce* payment of such debt by law, and not such security or payment the creditor may hope to gain by the debtor's inducing some one else to help him pay or secure it.   Hence the fact that Hattie A. Mallen did in fact sign the third deed of trust has nothing to do with the matter.

Nor do we think the fact that the Mallens moved to and lived upon the farm and that the husband ran or operated it and used a portion of the money he borrowed from the bank in improvements on the farm, made him her agent to create a lien thereon which would be superior to the lien he and she had given Metzger.   That is not the cause of action sued on herein.   The cause of action alleged is that *Metzger* clothed the husband with a fictitious credit by withholding his deed of trust from record, thereby leading the bank to believe the husband

owned more property than he did out of which the bank could enforce payment of his debt.

Again, what did the bank do? It, with full knowledge of the existence of Metzger's deed of trust on the land, exchanged its notes for a new note made by the Mallens to Smar, the president of the bank, and by him assigned to it, secured by the only deed of trust the Mallens would give, namely, a third deed of trust. That was all the Mallens proposed to give the bank and it was accepted. The bank got what it agreed to take, but now wants to supersede Metzger's deed of trust on the theory that he allowed the bank to believe that Ernest Mallen had more property than he did, and that the bank, relying upon his ownership of that property, was induced to lend him its money, when all the time the deed on record was notice to the bank that Mallen did not himself own the land and that it was not subject to execution for his debts. We do not see how it can be said the bank was thus induced by Metzger's action to lend its money to Mallen. And this is a necessary element of recovery, even where the title to the property the debtor is supposed to have is in such shape as to be subject to execution for his debts.

There was no agreement or promise on the part of Metzger to give the debt he held under his deed of trust to Mallen. Metzger says he had no such intention, and the fact that Mallen regularly paid the interest each year on the debt negatives the idea of any gift of the debt. Even if Metzger entertained an indefinite idea in his mind that possibly in the future he might give the debt to Mallen, we do not see how this would affect his rights herein since such idea never crystallized into actual fact and hence could add nothing to plaintiff's right to take precedence over Metzger's deed on the ground that they had been induced to lend money to Mallen because of fictitious credit Metzger's withholding of his deed from record is claimed to have given him.

The judgment is affirmed. All concur.