Thaddeus J. R. Bullock, Appellant, v. Elna Porter and Chester Porter, Respondents, No. 43767—284 S. W. (2d) 598.

Division Two, December 12, 1955.

*Riddle & Baker, Veryl L. Riddle* and *Charles H. Baker* for appellant.

*Bradley & Noble* for respondent Elna Porter.

[599]   STORCKMAN, J.—This action, involving title to real estate, was tried before the court sitting without a jury. The plaintiff has appealed from a judgment rendered December 31, 1952, finding that the plaintiff's interest in the property was that of a contingent remainderman in fee simple without "right of use or present enjoyment * * * until the termination of the life estate of defendant Elna Porter," and that the defendant Chester Porter, husband of Elna Porter, had no interest in the property. The court further found that the property was not subject to partition. Since the defendant Chester Porter has taken no active part in the trial of the case or on appeal, references to the defendant or the respondent will be intended to designate Elna Porter unless otherwise indicated.

The first amended petition upon which the case was tried was in three counts. The first count alleged that the plaintiff was the owner "in fee simple, of an undivided one-half of the real property hereinbefore described and the remainderman, in fee simple, of the remaining undivided one-half of said property," and that the defendant Elna Porter is the owner of a life estate in an undivided one-half interest in said property. The second count alleged that the plaintiff was "the owner, in fee simple, of an undivided three-fourths of the real property hereinbefore described and the remainderman, in fee simple, of the remaining undivided one-fourth of said property." The third count was for partition of the property. Defendant Elna Porter, by her amended answer, contends that she is the owner of a life estate in the entire property and is entitled to remain in possession for and during her natural life and that the plaintiff is a contingent remainderman not entitled to partition. Defendant Chester Porter claimed no interest in the property and made default.

The real estate in question, located in Holcomb, Dunklin County, Missouri, is residence property. The legal controversy arises out of the terms used in the general warranty deed dated April 22, 1919, which, omitting the signature and acknowledgment, is as follows:

"THIS INDENTURE, Made on the *22nd* day of *April* A. D. *1919*, by and between *M. A. Hogue* of *Dunklin County Missouri* Party of the First Part, and *J. R. Bullock and Elna Bullock (his wife) and her bodily heirs by J. R. Bullock* of the County of *Dunklin,* in the State of *Missouri,* parti*es* of the Second Part:

"WITNESSETH, That said party of the First Part, in consideration of the sum of *Eighty three hundred and no/100* * * * * DOLLARS, to *me* paid by the said parti*es* of the Second Part, the receipt of which is hereby acknowledged, do by these presents Grant, Bargain and Sell, Convey and Confirm, unto the

said part*ies* of the Second Part, *his* heirs and assigns the following described Lots, Tracts or Parcels of Land, lying, being and situated in the County of *Dunklin* and State of *Missouri,* to-wit: [The real estate is here described by metes and bounds.]

[600] "TO HAVE AND TO HOLD The premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining unto the said part*ies* of the Second Part and unto *his* heirs and assigns, FOREVER, the said *M. A. Hogue* hereby covenanting that *he is* lawfully seized of an indefeasible Estate in Fee in the premises herein conveyed; that *he* has good right to convey the same; that the said premises are free and clear from any incumbrance done or suffered by *me* or those under whom *I* claim, and that *I* will WARRANT AND DEFEND the title to said premises unto the said part*ies* of the Second Part, and unto *his* heirs and assigns, FOREVER, against the lawful claims and demands of all persons whomsoever *Except all taxes for the year 1918 and hereafter.*

"IN WITNESS WHEREOF, The said part*y* of the First Part ha*ve* hereunto set *his* hand the day and year first above written.''

The original deed is before us as an exhibit; it is upon a printed form. The portions in italics were inserted in typewriting.

At the time of the conveyance J. R. Bullock and Elna Bullock (now Elna Porter) were married to each other and the plaintiff, their son and only child, was then one year and eleven months old. The defendant Elna Porter testified that she paid $4,000 of the $8,400 consideration paid for the property. J. R. Bullock, his wife and son all occupied the property until November 18, 1930, when J. R. Bullock divorced his wife. After the divorce J. R. Bullock married again and Elna Bullock married Chester Porter. J. R. Bullock occupied the dwelling for about six months after his remarriage but removed therefrom at the request of the defendant Elna Porter who, with her husband Chester Porter, has since occupied the property as her residence.

On February 19, 1935, J. R. Bullock died intestate leaving as his heirs the plaintiff and Pearl Ola Brooks, a daughter by a previous marriage. The defendant testified that the house was purchased for the use of Mr. Bullock, herself and their son. She claimed that she had "the ruling of the house" and her son could live in the house with her if he helped a little with the expenses. The plaintiff, 35 years old at the time of the trial, has at least on occasions lived in the house with his mother and has contributed to the payment of some of the expenses of maintenance.

The plaintiff, on May 26, 1950, prior to the filing of the suit, obtained a quitclaim deed from his half sister, Pearl Ola Brooks, and her husband. The stated consideration was $1.00 and other valuable consideration. The plaintiff testified that he paid the $1.00, and that the

other consideration consisted of a settlement whereby the plaintiff agreed not to press any claim against the Brooks for any money that he did not get from his father's estate.

Plaintiff asserts that his father, J. R. Bullock, was the owner of an undivided fee simple interest which plaintiff and his sister, Pearl Ola Brooks, inherited at the time of the father's death. The plaintiff attributes the creation of this interest to the use in the deed of the words "*his* heirs and assigns" together with the fact of his father's divorcing the defendant.

The words "J. R. Bullock and Elna Bullock (his wife) and her bodily heirs by J. R. Bullock," standing alone, give little difficulty as to their meaning. At common law the term "her bodily heirs" created a fee tail estate which limited the descent to the class of heirs specified. However, this has been changed by our statutes. Section 442.470, RSMo 1949, provides that any person who might become seized of an estate in lands that would have been in fee tail at common law, "instead of being seized thereof in fee tail, shall be deemed and adjudged to be, and shall become, seized thereof for his natural life only; and the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass according to [601] the course of the common law, by virtue of such devise, gift, grant or conveyance."

Section 442.480 provides that where a remainder in lands shall be limited to take effect on the death of any person, the word heirs "shall be construed to mean heirs or issue living at the death of the person named as ancestor." Section 442.490 provides that where a remainder shall be limited to the heirs of the body of a person to whom a life estate in the premises shall be given, the persons who shall be the heirs of the body of such tenant for life "shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them."

In the case of Mattingly v. Washburn, 355 Mo. 471, 196 S.W. 2d 624, the deed of conveyance named as grantees "Nettie K. Mattingly and her bodily heirs * * * parties of the second part." It was held, 196 S.W.2d l.c. 626, that "under the authorities Nettie K. Mattingly took a life estate under the deeds in question and her son John a contingent remainder, the contingency of his estate becoming vested being his qualifying upon the death of Nettie K. as her 'bodily heir,' a contingency which fell in when he predeceased his said mother."

In the case of Stigers v. City of St. Joseph, Mo., 166 S.W. 2d 523, the land was deeded to Quantie Stigers for and during the term of her natural life and at her death to the heirs of her body. This court held that the plaintiffs, who were sons of Quantie Stigers, were merely contingent remaindermen during their mother's lifetime and had no vested rights to protect during the lifetime of Quantie Stigers. Other Missouri cases are to the same effect.

■ The grant to J. R. Bullock and Elna Bullock, his wife, as we have seen, created a life estate in them by reason of the provisions of § 442.470. Because they were husband and wife, their interest in the life estate was by the entirety because § 442.450 permits such an estate and the authorities hold that this is the legal force and effect of such a conveyance. 41 C.J.S. 460, Husband and Wife, § 34b; 26 Am. Jur. 705, Husband and Wife, § 80.

Plaintiff misconceives the effect of the divorce upon the life estate which his parents possessed in the property. At most, the effect of the divorce was to convert the tenancy by the entirety in the life estate to a tenancy in common. J. R. Bullock and Elna Bullock continued as cotenants of the life estate. Absent provision to the contrary, the duration of such a life estate is measured by the lifetime of the one last to die and not by the joint lives of the cotenants. In 31 C.J.S. 78, Estates, § 65(2), it is stated: "An estate for the tenant's own life and for the life of another person does not terminate on the death of the tenant during the life of the other person but only on the death of the survivor of these two persons, and *an estate to two persons for and during their natural life continues during the life of each, and is terminated only at the death of the survivor.*" (Emphasis supplied.)

■ The intent and purpose of the conveyance as gathered from the terms of the deed and the circumstances of the parties make the above statement of the duration of life estates particularly applicable to this case. At the time the property was acquired J. R. Bullock and Elna Bullock were husband and wife and the parents of the plaintiff, then about two years old. The husband and wife both contributed to the purchase price. The use of the words "heirs of her body by J. R. Bullock" shows an intent to keep the descent to the issue of that marriage. It shows an intent to exclude from inheritance Pearl Ola Brooks, a daughter of J. R. Bullock by a previous marriage, and also the bodily heirs of Elna Bullock by any other marriage. The obvious purpose was that J. R. Bullock and Elna Bullock should have the use of the property during their lifetime and the fee should then vest in the bodily heirs of that particular marriage. Further, the deed shows an intent that the duration of the life estate should be measured by the life of the one who was last to die and that such one should have the use of the entire premises. [602] The conduct of the parties during the lifetime of J. R. Bullock was consistent with this construction. After the divorce neither J. R. Bullock nor Elna Bullock undertook to partition their life interests. For a portion of the time each occupied the entire premises. The term "for his natural life only" in § 442.470 refers as much to the right and interest of Elna Bullock as it did to that of J. R. Bullock.

Furthermore, by force of this statute, § 442.470, the quantum of the estate taken by J. R. Bullock and Elna Bullock was limited to their natural lives *only.* To permit this life estate so held to be expanded

into a fee would mean that it could be alienated contrary to the provisions of the statute, § 442.470, which establishes and safeguards the life estate and remainder interests. A life tenant may convey his interest, but the grantee acquires no greater or different interest than that possessed by the life tenant, and such conveyance will have no effect upon the rights or interests of the remainderman. Friesz v. Friesz, 344 Mo. 698, 127 S.W.2d 714, 717 [5]; Schee v. Boone, 295 Mo. 212, 243 S.W. 882, 885 [8].

Plaintiff contends, however, that the use of the words *"his* heirs and assigns" in the granting and habendum clauses of the deed and in the covenant of warranty shows an intention of the parties to give J. R. Bullock "one-half in fee." Logically, and in order of statement, there is more reason to say the term *"his* heirs and assigns" refers to the bodily heir in whom the fee simple estate ultimately vests than to J. R. Bullock, one of the life tenants. Assuming, however, that the word "his" refers to J. R. Bullock, the essential question, then, is whether the description of the parties in the premises of the deed can be modified and restricted by the words *"his* heirs and assigns" appearing subsequently in the deed. We do not construe these words to express an intention to enlarge, restrict or modify in any way the estates created in the premises by use of the words "J. R. Bullock and Elna Bullock (his wife) and her bodily heirs by J. R. Bullock." This phrase is more definite and specific than the term "his heirs and assigns," and it has been held in Hunter v. Patterson, 142 Mo. 310, 321, 44 S.W. 250, that the specific words will prevail over the general limitation. In the event of an inconsistency, the provisions in the premises of a deed generally prevail over the habendum. In Re Collins' Trust Estate, 354 Mo. 614, 190 S.W.2d 259. The term "premises" is generally held to refer to all that part of the deed which precedes the habendum clause, including the names of the parties. McCune Gill's Tiedeman on Real Property, 4th Ed., § 589. The dominant rule in Missouri is that the intention of the parties is to be gathered from the deed as a whole. In Re Collins' Trust Estate, supra; Petty v. Griffith, Mo., 165 S.W.2d 412, 415; Clinton County Trust Co. v. Metzger's Executors, 219 Mo. App. 365, 271 S.W. 1008. The primary and dominant intent of this deed appears to be expressed in the premises, wherein the parties of the second part are described as "J. R. Bullock and Elna Bullock (his wife) and her bodily heirs by J. R. Bullock."

If we give the description of the parties of the second part, as contained in the premises, their complete significance, then the reference to "her bodily heirs by J. R. Bullock" is included within the meaning of the words "parties of the second part" wherever that term is mentioned in the deed. Whatever significance the term "his heirs and assigns" has, can be applied only after the estates created by the

description of the second parties in the premises of the deed has been recognized and given effect.

In support of his contention the plaintiff cites and relies heavily upon two New Jersey cases. In Kimble v. Mayor and Common Council of City of Newark, 91 N.J.L. 249, 102 A. 637 (1917), the deed named Jacob Ralph and Elizabeth Ralph, his wife, as parties of the second part. The granting and habendum clauses and the covenant of seisin referred to the party of the second part and her heirs and assigns. The covenant of warranty was to Jacob Ralph and Elizabeth Ralph, heirs and assigns. The court held that Jacob and Elizabeth Ralph were seized of a life estate by the entirety with right of survivorship [603] "and that to the estate of the wife there was added a limitation over to her heirs." Several factual differences appear. The term "bodily heirs" was not used at all and, most importantly, the term was not included in the description of the party of the second part. Furthermore, in New Jersey the quantity of the estate conveyed must depend upon the operative words of conveyance and the whole instrument cannot be examined to determine intent, which is contrary to the Missouri rule. For similar reasons the case of Den ex dem Eliza Hardenbergh v. Jacob R. Hardenbergh, 10 N.J.L. 42 (1828), has no persuasive effect.

It may be that during the five-year interval between the divorce in 1930 and the death of J. R. Bullock in 1935, J. R. Bullock had the right to partition the life estate which he did not have while it was held by the entirety. This right, if it ever existed, was not exercised by J. R. Bullock and was extinguished by reason of his death. In the view we take of the case, we do not reach the question of what the rights of J. R. Bullock were during that period of time or whether defendant forfeited her dower and other rights in J. R. Bullock's property, as contended by the plaintiff. Nor do we undertake to decide what reversionary rights, if any, the grantor might have in the event the defendant Elna Porter died without bodily heirs by J. R. Bullock. The determination of that question would involve persons not parties to this litigation and questions of interpretation which were not reached in the decision of this case.

We therefore hold that the defendant Elna Porter is the owner of a life estate in the entire real estate in question and that the plaintiff is a contingent remainderman subject to qualifying at the time of her death as a bodily heir of Elna Porter by J. R. Bullock. Having no vested or severable interest, the plaintiff is not entitled to partition. Noyes v. Stewart, 361 Mo. 475, 235 S.W.2d 333; Dodd v. McGee, 354 Mo. 644, 190 S.W.2d 231.

The judgment is affirmed. All concur.